UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MICHAEL BUCHANEK | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. V-08-08** |
| v. | § | |
| | § | |
| CITY OF VICTORIA, et al., | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court are two motions to dismiss: one by Fort Bend County, Texas and Sheriff's Deputy Keith Pikett (Dkt. No. 19)[1] and another by the City of Victoria, Texas, Richard L. Jones and Sam Eyre (Dkt. No. 21), the later of which incorporates by reference portions of a previously-denied Motion to Dismiss (Dkt. No. 4). Having considered the motions, the responses, and the relevant law, the Court finds that the motions should be granted in part and denied in part.

### I. Background

This civil rights action arises out of the alleged wrongful search, seizure, and investigation of Michael Buchanek stemming from the Victoria Police and Sheriff's Departments' criminal investigation into the murder of Sally Blackwell. Buchanek claims that the City and County of Victoria, Texas, through then-acting Chief of Police Richard Jones, County Sheriff T. Michael O'Connor, and the government entities' inadequate policies, practices, and/or customs, failed to properly train or supervise various City and County officers resulting in the violation of, among other things, Buchanek's Fourth and Fourteenth Amendment rights.

---

[1] This motion was apparently filed twice, both as Dkt. No. 19 and as Dkt. No. 20. The Court will treat the two filings as a single motion and its rulings will apply equally to both.

According to Buchanek's Amended Complaint (Dkt. No. 18), sometime in March 2006 Blackwell was abducted from her home and found dead shortly thereafter, on March 15, 2006. Investigators discovered Blackwell's body in rural Victoria County, approximately 5.5 miles away from her residence. Finding Blackwell's death to be a homicide, the Victoria Police Department and Victoria County Sheriff's Department began conducting an investigation into her kidnapping and/or murder. Based primarily on Buchanek's casual social relationship with Blackwell, investigating officers began focusing on Buchanek as a potential suspect.

Buchanek asserts that the preliminary investigation was improperly conducted and the reports and affidavits gleaned therefrom, which were used to obtain a search and seizure warrant from State District Judge Stephen Williams, selectively withheld crucial information and were actively misleading. According to two affidavits sworn to by Sam Eyre, a detective with the Victoria Police Department, the investigating officers employed scent-tracking canines, which trailed directly from Blackwell's body to Buchanek's residence. The affidavits identified Buchanek as a "suspect party" and indicated that probable cause existed to support a search and seizure warrant of Buchanek's home and vehicle.

Buchanek alleges that the statements in Detective Eyre's affidavits were significantly misleading. The canines did not track directly from Blackwell's body to Buchanek's home; rather, the dogs first scented the area surrounding Blackwell's body and then tracked back to the *victim's* home. The dogs were thereafter rescented with a rope from Blackwell's body and officers placed the animals at various locations in the neighborhood. Based on the rescenting and neighborhood placements, the canines found their way to Buchanek's residence. In a subsequent "scent line-up," the canines were presented with documents once touched by Buchanek, but which also contained

the scent of numerous other individuals. The canines identified Buchanek's scent as matching that found on the rope taken from Blackwell's body.

Buchanek maintains that the statements sworn to in Detective Eyre's affidavits were presented to Judge Williams in a deliberate effort to deceive him because the dogs were incapable of the direct tracking Detective Eyre reported, the scent line-up used to rescent the canines was cross-contaminated and intentionally manipulated to indicate Buchanek as a suspect, and the route Detective Eyre swore the dogs to have taken could not possibly have been followed. Buchanek asserts that other individually-named defendants personally participated in the preliminary investigation and helped Detective Eyre prepare the illusive affidavits knowing full-well that he would swear to them and a warrant be thereby improperly obtained. The canines were handled by Keith Pikett, a deputy sheriff for Fort Bend County, Texas, who was acting as a "borrowed servant" for Victoria County.

During the probable cause hearing with Judge Williams, a third investigating officer, Tom Copeland, a deputy sheriff for Victoria County, presented untrue verbal assertions concerning Buchanek's mental and emotional state. Deputy Copeland's observations added credence to the conclusion probable cause existed to support the issuance of a search and seizure warrant.

Based on the foregoing, the investigating officers received a warrant to search Buchanek's home and vehicle and seize relevant evidence therefrom. Through the search and seizure of both Buchanek's person and property and the ensuing investigation, Buchanek contends he was subjected to "a course of harassment, distress and terror." The investigation ultimately failed to unearth any evidence tying Buchanek to Blackwell's kidnapping or murder.

Several months later, on August 10, 2006, Jefferey Grimsinger was arrested in connection

3

with Blackwell's homicide. On January 11, 2008, Grimsinger pled guilty to the kidnapping and murder of Blackwell.

Buchanek asserts that the investigation as to his potential role in Blackwell's death was intentionally manipulated and the warrant obtained to further the inquisition was not justified by probable cause. Buchanek appears to attribute the maliciously-instigated probe at least in part to the fact that he is a former high-ranking officer with the Victoria County Sheriff's Department. Buchanek contends that as Chief of Police and County Sheriff, with authority to supervise and train subordinate law enforcement officers, Chief Jones and Sheriff O'Connor failed to implement an effective training program for or provide adequate supervision over their officers, demonstrating reckless or callous indifference to the rights of citizens such as Buchanek. Buchanek further maintains that the City of Victoria and Victoria County's internal policies, procedures, and/or customs, which were adopted with deliberate indifference, brought about these consequences resulting in the deprivation of Buchanek's constitutional rights.

Buchanek's Initial Complaint (Dkt. No. 1) was challenged by a Motion to Dismiss (Dkt. No. 4), which Buchanek responded to by filing a Motion for Leave to File an Amended Complaint (Dkt. No. 16). The Court granted Buchanek's motion for leave to file and accordingly denied the motion to dismiss as moot (Dkt. No. 17). The parties thereafter agreed to dismiss as defendants Fort Bend County, Texas and Deputy Pikett, in his official capacity (Dkt. No. 25). All other named defendants remain live parties to this action. Defendants then filed the pending motions, which the Court will address below.

## II. Standard of Review

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a

claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in his favor. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.* at 1974; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

### III. Motion to Dismiss by the City of Victoria, Richard L. Jones and Sam Eyre

### A. Claims Against Individual Defendants

#### 1. Plaintiff's Failure to State Claims Against Individual Defendants in their Official Capacities

Defendants maintain that any claims brought against Chief Jones or Detective Eyre in their

official capacities should be dismissed as duplicative. In his Original Complaint, Buchanek asserted that each individual defendant, in both their individual and official capacities, should be liable for Buchanek's constitutional deprivations and the harm resulting therefrom. Buchanek's Amended Complaint, however, appears to abandon any such contention. The Amended Complaint asserts claims against the government entities, through the conduct of the relevant individual defendants, and separately asserts claims against the individual defendants in their individual capacities. *See* Dkt. No. 18 ¶¶ 2-7 (specifically naming the individual defendants in their individual, and not official, capacity). To the extent Buchanek asserts in Paragraphs 22 and 30 of his Amended Complaint that the individual defendants are being sued in both capacities, Buchanek's response to the various motions to dismiss makes clear he intended to abandon such a claim. *See* Dkt. No. 24 ¶ 11. Thus, this issue is moot and Defendants' motion is therefore DENIED. The Court notes, however, that if Buchanek later attempts to assert claims against the individual defendants in their official capacities, such claims would necessarily fail as "[a]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 171 (1985).

### 2. Plaintiff's Failure to State an Actionable Claim of Unconstitutional Conduct

Defendants maintain Buchanek failed to plead actionable civil rights claims under section 1983 because he did not adequately allege a constitutional violation. Buchanek appears to have pled several constitutional bases for his section 1983 claim, each of which will be addressed below.

### a. Plaintiff's Failure to Allege Sufficiently Culpable Conduct

Defendants contend that because Buchanek merely brings forth allegations the investigating officers and government entities were negligent, he is barred from bringing a claim pursuant to section 1983.

As Defendants correctly point out, to bring a section 1983 claim, a plaintiff must contend that the alleged constitutional deprivation was intentional or due to deliberate indifference and not merely the result of negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992). Defendants' argument that Buchanek failed to do so, however, is patently without merit.

At all times in Buchanek's Amended Complaint, he asserts that Detective Eyre, Chief Jones, and the City of Victoria through Chief Jones acted with intent and deliberate indifference. *See* Dkt. No. 18 ¶¶ 16-21, 25(b), 29, 35 & 36(a). Buchanek has sufficiently pled constitutional deprivations. Defendants' motion to dismiss for plaintiff's failure to plead sufficiently culpable conduct is therefore DENIED.

### b. Fifth Amendment Violations

Defendants assert that Buchanek's claims arising under the Fifth Amendment are uncognizable under section 1983. Buchanek does not attempt to dispute Defendants' contentions but rather bluntly states that he "has not and does not" assert any Fifth Amendment claims. Dkt. No. 24 ¶ 11. This issue is therefore moot and Defendants' motion to dismiss on such grounds is accordingly DENIED. The Court notes, however, that if Buchanek were to subsequently bring a claim under the Fifth Amendment's due process clause, it would necessarily fail as the clause only applies when a constitutional deprivation is caused by a federal actor. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

### c. Fourteenth Amendment Violations

Defendants contend that Buchanek's claims arising under the Fourteenth Amendment are also uncognizable under section 1983 and should be recharacterized as claims brought pursuant to the Fourth Amendment.

7

Buchanek's Fourteenth Amendment due process claims, although not identified in his Amended Complaint with great clarity, appear to stem directly from his Fourth Amendment complaints that the warrant was obtained, and subsequent criminal investigation undertaken, without probable cause.[2] In his response to the various dismissal motions, Buchanek fails to aid the Court in identifying the independent roots of his Fourteenth Amendment claims, merely asserting that he has a "constitutional right pursuant to the Due Process clause to be protected from arbitrary and unlawful malicious acts of government agents." Dkt. No. 24 ¶ 11.

To the extent Buchanek could possibly be understood as separating his Fourteenth Amendment due process claims from his Fourth Amendment unreasonable search and seizure claims, such contentions amount to nothing more than general allegations of "malicious prosecution."[3] The Fifth Circuit has made clear that stand-alone claims of malicious prosecution, no matter how artfully—or inartfully—pled, do not result in a violation of the Constitution and are thus not grounds for a section 1983 claim. *Castellano v. Fragozo*, 352 F.3d 939, 945, 953-54 (5th Cir. 2003) (announcing that there is no "freestanding constitutional right to be free from malicious prosecution," "the assertion of malicious prosecution states no constitutional claim" and "[t]he

---

[2] Any confusion in this characterization can be directly traced to the fact that Buchanek's Amended Complaint fails to clearly organize the causes of action brought. Buchanek presents two counts, the first of which is aimed at each individual defendant, and the second of which is brought against the relevant government entities at issue as well as Chief Jones and Sheriff O'Connor. In each count, Buchanek alternates between general allegations that the defendants violated his due process rights and engaged in unlawful searches and seizures.

It is clear that Buchanek's later allegations refer to his claims brought under the Fourth Amendment. Buchanek, however, fails to consistently or specifically identify the due process rights allegedly violated pursuant to the Fourteenth Amendment. Buchanek has fallen well short of the Fifth Circuit's requirement that he "identify a life, liberty or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 92, 935 (5th Cir. 1995). Reading the complaint liberally, however, the Court understands Buchanek to generally contend that both his procedural and substantive due process rights were violated apart from his more clearly-asserted Fourth Amendment violations.

[3] Although the Fifth Circuit has cautioned against use of the term "malicious prosecution" as it only invites confusion when used as a broad tag to identify alleged constitutional violations, *see Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003), the Court finds it difficult to separate Buchanek's Fourteenth Amendment contentions from those found is other cases analyzing liability under a claim of "malicious prosecution."

initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example"). Claims such as those presented by Buchanek, moreover, are properly analyzed under the Fourth, and not the Fourteenth, Amendment. *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (indicating claims related to pretrial deprivations of liberty must be analyzed under the Fourth Amendment); *Reynolds v. New Orleans City*, CA No. 06-31122, 2008 WL 853591, at *5 (5th Cir. Apr. 10, 2008) (reasoning that allegations of pretrial deprivations of due process rights properly invoke protection under the Fourth Amendment) (collecting cases); *Laughman v. Pennsylvania*, CA No. 1:05-CV-1033, 2007 WL 2345295, at *8 n.8 (M.D. Pa. Aug. 16, 2007) (citing various circuit opinions, including *Castellano*, in support of the proposition that "intentional fabrication of inculpatory evidence *to secure a conviction* violates due process") (emphasis added); *Rakun v. Kendall County, Tex.*, CA No. SA-06-CV-1044-XR, 2007 WL 2815571, at *19 (W.D. Tex. Sept. 24, 2007) (differentiating between the Fourteenth Amendment due process rights recognized by *Castellano*, which may apply when a conviction is wrongfully obtained due to perjured testimony adduced at trial, and pretrial constitutional deprivations which arise under the Fourth Amendment); *Bielefeld v. Haines*, CA No. 3:04CV-151-R, 2005 WL 6122527, at *4 (W.D. Ky. Apr. 7, 2005) (same).

Accordingly, Buchanek has not stated a constitutional violation under the Fourteenth Amendment and the factual underpinnings intended to support such a cause of action will be analyzed under the more specific Fourth Amendment rubric. The Court, therefore, GRANTS Defendants' motion to dismiss as to the Plaintiff's Fourteenth Amendment claims.

### d. Fourth Amendment Violations

Buchanek alleges that the unlawful search and seizure of his property and person violated

his Fourth Amendment rights. Defendants contend that his allegations do not represent a constitutional violation. The Fourth Amendment prohibits unreasonable searches and seizures, and the Fifth Circuit has recognized that such constitutional violations may lay the foundation for a section 1983 claim. *See* U.S. CONST. amend. IV; *see also United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000); *United States v. Kye Soo Lee*, 898 F.2d 1034, 1039 (5th Cir. 1990). The inquiry as to whether a search and seizure is lawful turns on whether the action was taken with probable cause. *Id.*; *see also Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established right.").

Moreover, once "facts supporting an arrest [or, in this case, a search and seizure] are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation" for the alleged constitutional violation. *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) (citing *Wheeler v. Cosden Oil & Chem. Co.*, 744 F.2d 1131, 1132 (5th Cir. 1984)); *see also Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (discussing the chain of causation doctrine in the context of procuring a grand jury indictment). Claims concerning violations of the Fourth Amendment may nevertheless be maintained if the plaintiff affirmatively shows that "the deliberations of that intermediary were in some way tainted by the actions of the defendants." *Taylor*, 36 F.3d at 457 (quoting *Hand*, 838 F.2d at 1427); *see also Fitch v. Morrow*, 199 Fed. App'x. 347, 2006 WL 2505211 (5th Cir. 2006) (affirming summary judgment in favor of the defendant because the plaintiff had not "provide[d] sufficient evidence to indicate that [the defendant] tainted the magistrate judge's decision to sign the warrant.").

Buchanek's allegations, when accepted as true and reasonable inferences therefrom are drawn in his favor, eviscerate the conclusion that the search and seizure of Buchanek's person and property were instigated with probable cause. Although probable cause is "a fluid concept—turning

on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," *Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000), when read liberally, the assertions contained in Buchanek's Amended Complaint paint a picture of an unreasonable, malicious and politically-motivated investigation which was undertaken without any underlying merit. Whether Buchanek can bring forth evidence to support such sensational claims, however, is another matter—one which must be confronted at summary judgment or trial. Buchanek further alleges that any deliberations by Judge Williams were tainted by Defendants' misinformation. Buchanek has thus plainly averred that the chain of causation between Defendants' allegedly wrongful acts and Buchanek's harm was not broken. Accordingly, Defendants' motion to dismiss concerning Buchanek's Fourth Amendment claims is DENIED.

### 3. Qualified Immunity as to Plaintiff's Claims Under Section 1983 Against Detective Eyre and Chief Jones in their Individual Capacities

Defendants invoke the doctrine of qualified immunity as to Buchanek's section 1983 claims against Detective Eyre and Chief Jones in their individual capacities.

The qualified immunity doctrine provides that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, Fifth Circuit courts engage in a two-step process when examining claims of qualified immunity. The first step of the evaluation is whether the plaintiff has alleged a violation of a clearly-established constitutional or statutory right. *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004); *King v. Chide*, 974 F.2d 653, 657 (5th Cir. 1992). The next step is to determine the reasonableness of the defendant's alleged behavior. *Id.*

An assertion of qualified immunity is not a mere defense to liability, but immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Once a defendant raises the doctrine as a defense, a plaintiff has the burden to demonstrate it is not applicable before the Court can adjudicate the merits of the claim. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). As part of his burden, a plaintiff must comply with a "heightened pleading" standard. *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) ("[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff.") (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)).  To satisfy the heightened pleading standard, a plaintiff must plead more than mere conclusions—he must bring forth "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injuries." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *see also Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2004).

### a.  Qualified Immunity as to Detective Eyre

Defendants contend that Detective Eyre is entitled to qualified immunity from Buchanek's claims. Under the clearly-established legal standards governing the Fourth Amendment, which the Court described above, a search or seizure must be based on probable cause. "[A] qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause. On the other hand, if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citations and internal quotations omitted). After reviewing Buchanek's operative pleading, the Court finds that the facts asserted therein, when taken as true and viewed in the light most favorable to the plaintiff, allege with sufficient specificity a violation of the clearly-established constitutional protections against unlawful search and seizure. Buchanek's allegations, if proven, may show that no reasonable officer could have concluded that Detective Eyre had probable cause to search and/or

seize Buchanek's property and person, violating clearly-established constitutional protections. Buchanek's assertions, moreover, support the conclusion that Judge William's warrant, which was allegedly based on purposefully-false information, did not break the chain of causation between Detective Eyre's actions and Buchanek's injury. Therefore, Defendants' motion to dismiss as to Buchanek's section 1983 claims against Detective Eyre in his individual capacity is DENIED.

### b. Qualified Immunity as to Chief Jones

The Court understands Defendants to argue for dismissal as to Chief Jones on two grounds. Defendants first maintain Buchanek fails to allege that Chief Jones had any personal involvement in the investigation and procurement of warrants leading up to the search and seizure of Buchanek's person and property. Defendants next contend that to the extent Buchanek brings forth allegations relating to Chief Jones' failure to adequately train and/or supervise his subordinate officers, including Detective Eyre, he does so with insufficient particularity.

Buchanek alleges that some cabal of the individually-named defendants aided Detective Eyre in the preparation of the purportedly fraudulent affidavits. Dkt. No. 18 ¶ 16(d). It is unclear whether Chief Jones is among this group. Additionally, in response to the various motions to dismiss, Buchanek contends he alleged Chief Jones was present at the scene where Blackwell's body was discovered, participated in the canine tracking and actively engaged in the search of Blackwell's residence. Dkt. No. 24 ¶ 12 (citing Dkt. No. 18. ¶ 35). The Court does not find factual allegations within Buchanek's Amended Complaint supporting these latter assertions. Paragraph 35 solely concerns Chief Jones' failure to train and/or supervise his subordinate officers. The Court, moreover, fails to identify sufficiently specific contentions supporting the former possibility—that Chief Jones aided Detective Eyre's preparation of the affidavits. Thus, to the extent Buchanek contends Chief Jones should be individually liable based on his direct participation in the preliminary investigation,

13

such claims fail to state a claim upon which relief can be granted.

To the extent Buchanek alleges Chief Jones failed to adequately train and/or supervise his subordinate officers, however, such a claim has been properly brought. Supervisory officials such as Chief Jones cannot be liable under section 1983 for the acts of subordinates based on vicarious liability or respondeat superior theories. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Buchanek must instead establish that Chief Jones' own acts resulted in the deprivation of Buchanek's constitutionally protected rights. *Davis*, 406 F.3d at 381.

Pursuant to a "failure to train or supervise" theory, a plaintiff must show that: "(1) the supervisor either failed to train or supervise the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* (citations omitted). To establish that a municipal actor behaved with deliberate indifference, a plaintiff must establish "more than negligence or even gross negligence." *Id.* "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* (citations and internal quotations omitted).

Buchanek alleges that Chief Jones failed to train and supervise his subordinates and his failure to do so led to the deprivation of Buchanek's constitutional rights. *See* Dkt. No. 18 ¶¶ 32, 34 & 35-39. Buchanek supports such assertions with factual contentions as to Chief Jones' involvement. *See id.* Buchanek reports that the policies implemented, overseen and approved of by Chief Jones led to at least thirty-two similar practices of unconstitutionally obtaining warrants, which, for the purposes of this Order, sufficiently establishes supervision, causation and deliberate

14

indifference.

Although Buchanek may face difficulties supporting such allegations at summary judgment or trial, those arenas are the appropriate venue in which to vet the claims challenged here. If proven true, Buchanek's allegations reveal that Chief Jones may have unreasonably violated clearly-established constitutional rights, rendering him liable pursuant to section 1983. Accordingly, Defendants' motion to dismiss as to the section 1983 claims brought against Chief Jones in his individual capacity is GRANTED in part and DENIED in part.

**B. Claims Against the City of Victoria**

Buchanek contends that the City of Victoria is liable pursuant to 42 U.S.C. § 1983 based on its employing or ratifying policies or engaging in customs that resulted in violations of Buchanek's constitutional rights. The City maintains Buchanek has failed to plead sufficient facts to support such a claim.

Although a municipality may not be liable under section 1983 via a respondeat superior theory, it may be "liable for damages under § 1983 for constitutional violations resulting from official [] policy or custom." *Flores v. Cameron County*, 92 F.3d 258, 263 (5th Cir. 1996); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 659, 692-94 (1978). To state a section 1983 claim against a municipality, a plaintiff must allege that "1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred [by a person acting under the color of state law]; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996) (citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987)). "Acts of *omission*, as well as *commission*, may serve as a predicate for finding a policy or custom." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 987 (E.D. Tex. 2005) (citing *Doe v. Taylor Indep. Sch.*

*Dist.*, 15 F.3d 443, 463 (5th Cir. 1994)) (emphasis in original). A plaintiff must also assert that the municipality's inadequate policy or custom was adopted with deliberate indifference to the constitutional rights of its citizens. *City of Canton v. Harris*, 489 U.S. 378, 387-91 (1989). To state a claim in "failure to train or supervise" cases, a plaintiff must allege that the constitutional violation was a highly predictable consequence of such failure or failures. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 409 (1997).

The Supreme Court has clearly announced that courts should not apply a heightened pleading standard to section 1983 claims against municipal defendants. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993); *see also Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (recognizing that *Leatherman* only rejected a heightened pleading standard as it applies to municipalities and reaffirming the application of a heightened pleading standard for section 1983 claims against individual defendants). Consequently, a plaintiff need only comply with standard notice pleading requirements by presenting a "short and plain statement of the claims showing that the pleader is entitled to relief." *Id.*; FED. R. CIV. P. 8(a)(2). "Boilerplate" allegations of inadequate municipal policies or customs generally suffice. *See Jacobs v. Port Neches Police Dept.*, CA No. 1:94-CV-767, 1996 WL 363023, at *13-15 (E.D. Tex. June 26, 1996) (citations omitted); *see also Leatherman*, 507 U.S. at 167-79 (disapproving of the argument that "[t]o establish municipal liability under § 1983 ... a plaintiff must do more than plead a single instance of misconduct").

Here, Buchanek sufficiently alleges the requirements for municipal liability under section 1983. Buchanek asserts that: (1) an internal municipal policy of failing to provide adequate training and education to and supervision over the City's officers existed (Dkt. No. 18 ¶¶ 32-35) (2) a City-wide practice of prosecuting cases and applying for warrants without substantiation or probable cause

16

was in place (Dkt. No. 18 ¶¶ 32-35); (3) governmental policy-makers actually or constructively knew of the existence of such inadequate policies or otherwise took no action to remedy the situation, thereby tacitly authorizing such conduct (Dkt. No. 18 ¶¶ 36-37); (4) several constitutional violations occurred that were a direct result of the deficient policies, practices or customs (Dkt. No. 18 ¶¶ 21, 26-27 & 38); (5) the constitutional violations were committed by persons acting under the color of state law (Dkt. No. 18 ¶¶ 21, 35-38); (6) the municipal policies were adopted with deliberate indifference to the rights of citizens (Dkt. No. 18 ¶¶ 16-21, 25(b), 29, 35 & 36(a)); and (7) the City's internal mandates were the moving force behind the violation of Buchanek's constitutional rights (Dkt. No. 18 ¶ 36).

Buchanek's contentions sufficiently allege a cause of action against the City of Victoria under section 1983 based on the City's purportedly deficient policies. Defendants' motion to dismiss on such grounds is thus DENIED.

## IV. Motion to Dismiss by the Fort Bend County, Texas and Sheriff's Deputy Keith Pikett[4]

Defendants contend that Deputy Pikett should be dismissed because Buchanek fails to allege with sufficient particularity Pikett's personal involvement in the alleged wrongdoing leading to the search and seizure of Buchanek's person and property. The Court agrees.

At most, Buchanek has loosely implied Deputy Pikett was involved in the mishandled rescenting line-up. Buchanek's own allegations, however, indicate the alleged wrongdoing was not that of Pikett, but that of the Victoria County sheriff and his deputies. *See* Dkt. No. 18 ¶25(b) (complaining that the wrongful rescenting was based on documents supplied and practices adhered to by Victoria County officials). Buchanek has not alleged that Deputy Pikett knew of this

---

[4] Because Fort Bend County and Deputy Pikett, in his official capacity, have been dismissed from this suit, *see* Dkt. No. 25, the Court will only address this motion as it applies to Deputy Pikett in his individual capacity.

wrongdoing, and to the extent he was negligent in his acceptance of the rescenting materials, such a claim does not comprise a constitutional violation. *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992).

Buchanek has also not alleged with sufficient particularity that Deputy Pikett was personally involved in preparing the allegedly offending affidavits or supplying the untrue assertions contained therein. To the contrary, Buchanek affirmatively asserts that if the affidavits had described the canines' actions "in a manner *consistent with* the reports of [] Keith Pikett [they] would have shown that if the dog's actually tracked any scent it would likely be the victim's" rather than Buchanek's. Dkt. No. 18 ¶ 16(g) (emphasis added). Buchanek's own allegation shifts the thrust of his complaints away from Deputy Pikett. Moreover, as with the Court's analysis of the assertions pertaining to Chief Jones', broadly-inclusive allegations that other individually-named defendants aided Detective Eyre in the preparation of the affidavits do not with the required specificity indicate that Deputy Pikett was personally involved in any wrongdoing. *See* Dkt. No. 18 ¶ 16(d).

Although the Court agrees with Buchanek that Deputy Pikett was heavily integrated into the preliminary investigation giving rise to the affidavits at the core of this case, the allegations as set forth do not indicate anything other than negligent compliance with improper rescenting techniques engineered by Victoria City and County officials. Buchanek simply has not pled facts supporting the conclusion that Deputy Pikett, with intent or deliberate indifference, wrongly rescented the canines or helped prepare the deceptive affidavits. Deputy Pikett's tangential relation to the other defendant's alleged misdeeds does not meet the heightened pleading standard mandated by the Fifth Circuit and is insufficient to allow a claim against him to proceed. *See Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996).

Accordingly, Buchanek has not pled with the mandated specificity Deputy Pikett's

18

involvement with any wrongful conduct giving rise to this action. The Court, however, grants Buchanek twenty (20) days to file an amended complaint, if he chooses to do so, setting forth more specific allegations. If Buchanek chooses to not amend within the time period provided, the Court will dismiss the claims as to Deputy Pikett.

### Conclusion

Based on the foregoing, the Court finds that Defendants' motions to dismiss should be granted in part and denied in part.

It is so ORDERED.

Signed this 28th day of August, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

19