UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **MICHAEL BUCHANEK** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **CIVIL ACTION NO. V-08-08** |
| v. | § | |
| | § | |
| **CITY OF VICTORIA, et al.,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Fort Bend County Sheriff's Deputy Keith Pikett's Motion to Dismiss Plaintiff's Second Amended Complaint as Against Sheriff's Deputy Keith Pikett (Dkt. No. 49), to which the Plaintiff has responded. Having considered the motion, the response, and the relevant law, the Court finds that the motion should be denied.

**I. Background**

This civil right action stems from the alleged wrongful search, seizure, and investigation of Michael Buchanek ("Buchanek") by the Victoria Police and Sheriff's Departments. A more detailed summary of the events giving rise to this litigation has been set forth in an August 28, 2008 Order granting in part and denying in part two of Defendants' previous motions to dismiss. Dkt. No. 44. Additional facts relevant to the adjudication of this matter are developed below as necessary.

In the August 28, 2008 Order, the Court determined that Buchanek's First Amended Complaint (Dkt. No. 18) was lacking in some respects, but allowed Buchanek to further amend his complaint with more specific allegations curing certain deficiencies identified therein. Concerning Buchanek's charges as they relate to Fort Bend County Sheriff's Deputy Keith Pikett ("Pikett"), and of particular relevance to the present Order, the Court held that although it was apparent that "Pikett

was heavily integrated into the preliminary investigation giving rise to the affidavits at the core of this case, the allegations as set forth [in Buchanek's First Amended Complaint] do not indicate anything other than negligent compliance with improper rescenting techniques engineered by Victoria City and County officials." Dkt. No. 44 at 18. Buchanek then filed his Second Amended Complaint (Dkt. No. 47), which attempts to rectify the defects pinpointed in the Court's August 28, 2008 Order. The allegations in Buchanek's Second Amended Complaint supplementing those provided by his First Amended Complaint can primarily be found in paragraphs 15(b), (d), and (e), 24, 29, and 30, the relevant parts of which are summarized below:

> [15(b)] Sam Eyre stated in his affidavits that the dogs tracked directly from the body of Blackwell to Michael Buchanek's residence. In fact, the dogs did not track directly to Michael Buchanek's house. The dogs were reportedly placed at other locations in the neighborhood before they allegedly tracked to Michael Buchanek's house. Plaintiff asserts the dogs did not track to either the victim's house or Michael Buchanek's house, but were reportedly directed there by the cadre of officers involved, led by Pikett and O'Connor and Copeland.
>
> ...
>
> [15(d)] The scent lineup which supposedly identified Plaintiff's scent as being on the rope found on the victim's body was not properly conducted and/or arranged in that the documents used for Plaintiff's scent had been handled by several other people besides Michael Buchanek and who were of a different sex than Plaintiff. Pikett knew this fact....
>
> [15(e)] The scent lineup was conducted under the direction of Keith Pikett who purports to be an expert on such scent lineups. The lineup fails to comply with the standards stated by Defendant Keith Pikett to ensure accuracy and reliability if such reliability and accuracy is in fact possible. Plaintiff alleges from viewing video recordings of the scent line ups, it is not possible.
>
> The scent pads are moved from one container to another with out [sic] changing or sanitizing containers. There is no accounting for wind direction. There is no attempt to eliminate cross-contamination of the scent pad attributed to Plaintiff. All of these failures are shown by the fact that the dogs had to be wrong because Plaintiff's scent was not on the rope. The contrived and unreliable methods of Defendants Pikett, O'Connor, Eyre, Copeland, and Daniel who handled the scent pads on video, were

designed to create "evidence" pointing to Plaintiff as the murderer of Sally Blackwell.

...

[24(a)] Tracking: Plaintiff will prove by the testimony of an internationally renowned police tracking dog expert [] that the affidavit contents supporting the issuance of a search warrant are impossible.... Plaintiff has scholarly articles written by other experts that will show that dogs cannot track 5.5 miles, a body in a motor vehicle....

[24(b)] Scent line ups: Plaintiff will show by [way of an] expert that the scent line ups were not performed according to established protocol, but were rigged to be result oriented, that is, to maliciously and intentionally implicate Plaintiff .... Mr. Pikett, the supposed K-9 expert advised and participated in every flawed procedure used.

The sheriff and his deputies provided documents obtained from Plaintiff prior to his departure to Iraq, to-wit: a will, witnessed and notarized, and a power-of-attorney. These documents reasonably contained scents of other persons....

...

29. With special regard to Defendant Pikett, Plaintiff has been particularly violated. Through discovery, counsel for Plaintiff has inspected voluminous amounts of the training records of the dogs in question and other offense reports which document many tracking and scent line up's Mr. Pikett has conducted over the past years with said dogs, some as far back as 1998. Counsel went through over an estimated 1,000 records of tracks of three (3) or four (4) dogs, including the two dogs used here. Interestingly, few alleged motor vehicle track records were found, and the dogs were unsuccessful. Counsel can recall only one alleged motor vehicle track and the body was not found by the dogs. A substantial number of trackings stopped with the notation that the suspect appears to have gotten into a motor vehicle, so the track was stopped. Plaintiff asserts these facts go to prove his specific factual assertion that dogs cannot track persons who have gotten into or been placed in a motor vehicle and then driven away....

In fact, in this case, a TDCJ dog team with horses came to the site where Grimsinger threw Blackwell's purse and cell phone from his pickup truck less than a mile from where he dumped the body. Those dogs sniffed the phone and purse and then did what reliable and constitutionally valid, non-junk science K-9's would be expected to do, they searched for a scent and could not find one. These TDCJ dog handlers do not believe dogs can track persons in motor vehicles down paved roads and highways, and moreover declared they were familiar with Pikett and they "do not believe his dogs can do what he says they can do", and "he is full of b.s." VPD and

> VCSO has worked with Pikett prior to this escapade and are perhaps aware of his implicit compliance predisposition, particularly with Defendant Copeland....
>
> 30. Thus, the factual sequence is that Blackwell is abducted the night of March 13, 2006 ... On March 15, 2006, at about 7:00 p.m. Pikett arrived and instead of following reliable and accepted K-9 procedures, he took scent pads from the body and the rope. At the direction and in concert with Victoria officers, Pikett then reportedly directed the dogs approximately 5.3 miles, from Hanselman Road, to Loop 463, across U.S. 59 and U.S. 59 Business, over an overpass, into Cimarron to 310 Laguna, the Blackwell home (notwithstanding that is not the route described in the sworn affidavit). It was unreliable and wrong to use scent pads instead of the corpus delecti for reasons the experts will need to testify, but it involves principles of vacuum procurement of odor and stainless steel tubes with regard to the reasonable and customary international standard of care in obtaining scent samples. Plaintiff pleads these factual assertions to show the Court that Pikett's actions were so tainted and non-compliant with accepted technique in law enforcement, that he and anyone on his team necessarily knew that to perform the track and the scent line ups in this manner was done with intentional or deliberate indifference.... Attached as Exhibit "A" to this Second Amended Complaint is a copy of the route the dogs were reportedly directed and Exhibit "B" is a photographic illustration of the neighbor witness' account of the officer "sweeping" Navaho street prior to reportedly walking the dogs to Plaintiffs home and vehicle....Based on information and belief, Plaintiff believes Deputy Pikett and the other named Defendants at a minimum were personally involved in creating evidence for the search warrant affidavits, and participated in the thought process that went into the affidavits. Plaintiff unequivocably [sic] asserts that Pikett and other named Defendant at a minimum, all assisted in supplying the untrue assertions contained in the affidavits, and signed by Eyre.

Dkt. No. 47 ¶¶ 15(b), (d), & (e), 24, 29, & 30.

## II. Standard of Review

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in his favor. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on

the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.* at 1974; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

### III. Analysis

The qualified immunity doctrine provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, Fifth Circuit courts engage in a two-step process when examining qualified immunity defenses. The first step of the evaluation is whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004); *King v. Chide*, 974 F.2d 653, 657 (5th Cir. 1992). The next step is to determine the reasonableness of the

defendant's alleged behavior. *Id.* Claims arising under section 1983 must establish that the alleged constitutional deprivation was intentional or due to deliberate indifference and not merely the result of negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992).

Pikett first contends Buchanek's civil rights claims as they pertain to him must fail because they are predicated upon conclusory allegations and unwarranted deductions of fact and are not otherwise consistent with the remaining allegations found in the Second Amended Complaint. Visiting these themes throughout his Motion to Dismiss, Pikett primarily attacks Buchanek's allegations that 1) Pikett led the investigating officers by way of a "fictitious dog tracking" exercise in which Pikett himself led the canines (as opposed to allowing the canines to lead Pikett and the officers) and 2) Pikett employed "defective scent lineups" whereby he knowingly mishandled the materials used allowing investigating officers to identify Buchanek as the primary suspect for Sally Blackwell's abduction and murder. Intertwined with these arguments are Pikett's repeated attempts to recast Buchanek's assertions as amounting to nothing more than trumped up claims of negligence.

In forwarding these arguments, Pikett relies largely on *Omobude v. Merck & Co., Inc.* No. Civ. A. 3:03-CV-528-LN, 2003 WL 25548425 (S.D. Miss. 2003). In *Omobude,* the plaintiff brought suit against the pharmaceutical giant and his mother's then-acting physician for the wrongful death of his mother stemming from her use of the drug Vioxx. *Id.* at *1. The plaintiff alleged that Merck actively "misrepresented the safety and effectiveness" of the drug to both the public and physicians, effectively concealing its known, dangerous side effects. *Id.* The plaintiff's allegations against his mother's physician, however, sounded in medical negligence. *Id.* The plaintiff—in direct conflict with what the court appears to have deemed the cardinal factual assertions lobbed against

Merck—alleged that the treating physician "knew or should have known[] of the dangerous side effects of these medications." *Id.* Although it acknowledged the plaintiff's ability to plead alternative and inconsistent facts supporting various theories for recovery, the *Omobude* court concluded that "in cases like this, where a plaintiff has specifically alleged facts from which one would *necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him* ... to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information that has been misrepresented to or concealed from him." *Id.* at *2 (emphasis added). While the Court agrees with the *Omobude* court's reasoning, the case is not analogous to that before the Court.

In *Omobude*, the plaintiff's theories and the facts alleged to support them were nearly impossible to reconcile. It would be difficult to square the allegations that Merck hid the known side effects of a drug, deceiving physicians and the public alike, only for one of these unknowing physicians to simultaneously have known or be expected to know of such issues. Accordingly, requiring supporting factual allegations as to how the doctor came to know, or why the doctor should have known, of the drug's disparate effects seemed an appropriate requirement. Here, Buchanek has alleged that Pikett intentionally manipulated the tracking and scenting of the dogs in concert with Victoria City and County officials. Buchanek's allegation that Pikett knew of the "cross-contaminated" nature of the purportedly mishandled documents and led the canines during portions of the investigation are neither necessarily in conflict with the surrounding factual assertions nor purely conclusory in nature. Buchanek's operative complaint paints a clear picture of a group of officers intentionally manipulating an early-stage investigation in order to set up a suspect. The

complaint, in appropriate detail, places Pikett at the front of this effort.

That Buchanek has also alleged that Pikett ignored the standards applicable to proper canine tracking investigations is not only reconcilable, but also unsurprising. In a case such as this one, allegations of intentional misconduct will almost always include and engulf those sounding in negligence. In other words, Buchanek's assertion that Pikett knowingly rigged the dog tracking—whether by leading the canines, mishandling documents used in the scent line-up, or otherwise intentionally sidestepping the standards normally applied to canine scent tracking—will, by nature of the alleged behavior, include a failure to act according to the standards of a reasonably prudent investigating officer.

To the extent Pikett references select excerpts from the Court's August 28, 2008 Order and Buchanek's First Amended Complaint in an effort to defeat Buchanek's claims, neither document, nor the statements therein, are dispositive of the issues before the Court. Buchanek's Second Amended Complaint, the sole operative pleading being challenged here, sets forth sufficient allegations to allow his claims to survive.

Pikett also invites the Court to consider various attachments to his Motion to Dismiss, including an article printed from the Federal Bureau of Investigation ("FBI") website titled "Specialized Use of Human Scent in Criminal Investigations," and two Texas state cases in which Pikett was relied upon as an expert in canine tracking. *See* Dkt. No. 49, Exs. A & B. The FBI article includes a section subtitled "Vehicle Trails," which states that, in some instances, it is possible to track a person who has begun his travel by foot and continued his travel by vehicle.[1] The two state

---

[1] The FBI article states this is possible because vehicles recycle air by use of a "positive-ventilation system," which releases the vehicle's internal air (which contains the human suspect's scent) into the atmosphere, laying a scent trail certain canines may be able to follow. Dkt. No. 49, Ex. A at 8-9.

cases contain discussions as to Pikett and his dogs' qualifications as experts, but neither case appears to consider the "vehicle trail" tracking presented by this case. As the Court understands Pickett's arguments, these documents are aimed at establishing that 1) Pikett's method of tracking was, in contrast with Buchanek's allegations, possible, and 2) as a result, a reasonable investigating officer may have employed such a technique under the belief that it was so.

As an initial matter, the Court does not find the FBI article to be the type of document properly considered at this stage. As a general rule, courts considering motions to dismiss brought under Rule 12(b)(6) are limited to a review of the complaint and attachments thereto. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The Fifth Circuit, however, has recognized a limited exception: courts may consider documents attached to a motion to dismiss if the documents are referenced by the plaintiff's complaint and central to the plaintiff's claim. *Id.* (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The FBI article attached to Pikett's motion, however, is neither referenced by Buchanek's complaint, nor central to his claims.[2] If anything, the report's relevance is based on it being central to *Pikett's defense*. Although establishing that "vehicle trail" tracking is possible and may have been employed by an investigating officer who could have reasonably believed the technique to be so may at some point prove significant to this litigation, now is not the appropriate time to engage in a battle of experts. Buchanek's Second Amended Complaint has specifically pled that an expert will establish such tracking to be impossible, and accepting such an allegation as true and drawing all reasonable inferences therefrom in the plaintiff's favor, the Court concludes that Buchanek has brought forth

---

[2] The Court, moreover, finds the report not to be of the sort that can be judicially noticed, i.e, it neither contains information "generally known within the territorial jurisdiction of the trial court" nor is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. CIV. P. 201(b).

9

sufficient allegations to survive Pikett's motion.

Similarly, the Texas state cases attached to Pikett's motion—which indicate that at least some state courts have accepted him and his canines as tracking experts—do not establish that the specific procedures employed in this case were potentially feasible, undertaken without intentional manipulation, or otherwise of the sort that would, at this stage, grant Pikett the protection provided by qualified immunity.

## IV. Conclusion

Based on the foregoing, the Court finds that Defendants' motions to dismiss should be DENIED.

It is so ORDERED.

Signed this 27th day of February, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE