UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MICHAEL BUCHANEK, | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:08-CV-00008 |
| | § | JURY DEMANDED |
| CITY OF VICTORIA, TEXAS, | § | |
| SAM EYRE, SHERIFF T. MICHAEL | § | |
| O'CONNOR, TOM COPELAND, | § | |
| ANTHONY DANIEL, THE COUNTY | § | |
| OF VICTORIA, TEXAS, AND | § | |
| KEITH PIKETT, | § | |
| DEFENDANTS | § | |

PLAINTIFF'S RESPONSE TO DEFENDANT SAM EYRE'S
MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Plaintiff, Michael Buchanek, and files his response to Defendant S. Eyres',

Motion for Summary Judgment.

**Factual Background**

This civil rights action arises out of the alleged wrongful search, seizure, and

investigation of Michael Buchanek stemming from the Victoria Police and Sheriff's

Departments' criminal investigation into the murder of Sally Blackwell.  Plaintiff generally

stands on his allegations set forth in his Second Amended Complaint (Dkt. No. 47), although as a

result of the limited discovery granted plaintiff, the case has changed somewhat with facts and

parties.  For example, Plaintiff no longer alleges that Dep. Tom Copeland, or anyone else

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

1

accompanied Det. Eyre to Judge Williams' office to request the Warrants.  Additionally, Plaintiff

has dismissed Fort Bend County, Sheriff O'Connor, former Chief of Police Jones, Dep.

Copeland, and Dep. Daniel.   Additionally, Plaintiff does not believe and has not believed that

the vacuum procurement of odor using an STU is valid and erred in the sentence in his Second

Amended Complaint, *par. 30*; wherein he mentions vacuum procurement of odor and stainless

steel tubes, the word vacuum should be stricken as it was accidently inserted and not deleted in

the final draft.  Research notes were mistakenly confused with the final draft.

That being stated, Plaintiff adopts the Factual Background statement contained in

Deputy Pikett's Motion for Summary Judgement (Dkt. 89) as a reasonable summary of

Plaintiff's complaints and what the general issues involved are.

Plaintiff would further note that during this fictitious 5.5 mile alleged trailing exercise,

Eyre and Pikett, were followed at times, and led at times by members of a cadre of officers and

upon approaching an intersection, patrol cars would then proceed ahead of the dogs and two men

on foot, and block traffic which indicates people were leading the dogs.  Ex. 13, Eyre depo. p.35

-40.  Asked whether the dogs were leading the handlers or the handlers were leading the dogs,

Eyre testified, "It's a little of both".   Ex. 13, Eyre depo. p. 49.   Eyre was reckless in his

participation and reliance on Pikett, particularly since he had just experienced how 'non directed'

trailing dogs from the TDCJ behaved, when Ranger Miller brought that State team to the site of

the discovered phone and purse off Hanselman Road.  Ex. 13, Eyre depo. p. 62 - 68.  Eyre

decided early in these events culminating in the issuance of the warrants to omit material

information from Judge Williams. Ex. 13, Eyre depo. p 45 – 46.

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

2

After the result oriented dog show was over and Pikett left town and after the meetings of law enforcement officials were done and Eyres discussions with Det. Rodriquez were over, Eyre prepared the affidavits and swore them out to Judge Williams on Thursday morning, March 16, 2006, at 10:05 a.m., when the Warrants were wrongfully issued.

**<u>Standard of Review</u>**

Although summary judgment is proper in any case where there is no genuine issue of material fact, the existence of multiple issues of material fact preclude summary judgment in this instance. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex*, 477 U.S. at 322-23; *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992) (quoting *Anderson*, 477 U.S. at 248). Initially, the moving party must show "that there is an absence of evidence to support the non-moving party's case." *Celotex* at 325. Then the non-movant must come forward, after adequate time for discovery, with significant probative evidence showing a tangible triable issue of fact. Fed. R. Civ. P. 56(e), *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). A defendant cannot merely rely on conclusory statements to establish that the plaintiff has not presented evidence on an essential element of his claim.

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

3

Furthermore, only if the defendant meets his burden is a plaintiff required to respond by summary judgment proof to show a genuine issue of material fact.  Fed. R. Civ. P. 56(e).  In determining whether there is a disputed issue of material fact that precludes summary judgment, a court must consider all evidence in the light most favorable to the plaintiff as the nonmovant. *Fraire*, 957 F.2d at 1273.  To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. *See Anderson*, 477 U.S. at 251.  Rather, the non-movant must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. *Id.*

**Contours of Qualified Immunity**

To determine whether a governmental official who is being sued in his individual capacity is entitled to qualified immunity, the court must engage in a two-part inquiry. *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004).  A district court must determine whether the facts allege a violation of a clearly established constitutional right. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2004).  According to the Fifth Circuit, "[a] right is 'clearly established' if its 'contours. . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wooley*, 211 F.3d at 919 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).  But as the Supreme Court of the United States has pointed out, "[t]his is not to say that official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id.*  See also, *Hope v. Pelzer, 536 U.S 730, 741 (2002),* (the Court states, "Our opinion in *Lanier,* thus makes clear that officials still be on notice that

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

4

their conduct violates established law even in novel factual circumstances.") In making this determination, the court should view the facts in a light most favorable to the party asserting the injury. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Of course, this rule of which prong to consider first has been relaxed in its application by a trial court pursuant to *Pearson v. Callahan,* 129 S.Ct. 808 (2009).

The court also determines whether the defendant's conduct was objectively reasonable in light of clearly established law at the time of the incident. *Jacobs*, 228 F.3d at 393. "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known" that the defendant's conduct violated the plaintiff's asserted rights or a federal statute. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001). However, only if governmental officials "of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendant's assertion of qualified immunity should be denied because Plaintiff alleges facts that, if true, amount to a violation of Plaintiff's Fourth Amendment rights. The Fourth Amendment protects individuals against the unreasonable search and seizure of their person and property. Defendant's actions discussed herein were objectively unreasonable in providing inaccurate , inadequate and thus, deceptive information in the probable cause affidavits. The case sub judice is rooted in the Defendant's pattern of deception contained throughout the probable cause affidavits that Defendant drafted and presented to the magistrate for the search of Plaintiff's home and vehicle. Defendant's actions were objectively unreasonable in that no

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

5

objective, reasonably prudent officer would have drafted a deceptive probable cause affidavit nor relied on the fictitious trailing and unreliable scent line-up performed by Deputy Pikett.

**Sgt. Eyre's Affidavits did not Provide Probable Cause**

As a preliminary issue, Defendant argues that there was no violation of Plaintiff's Constitutional Right's because Defendant's affidavits provide substantial basis for a determination of probable cause.  First, Defendant contends that the information provided prior to any discussion of Deputy Pikett and his involvement provided the requisite probable cause necessary to support the issuance of a search warrant.  Defendant contends that the affidavits detail "multiple, suspicious connections" between the victim and Plaintiff that provide a substantial basis for determining probable cause.  This is simply not the case.  You can separate these "connections" into two categories: innocent connections and the inarticulable hunch of Detective Rodriguez.

These innocent connections can be boiled down to the three basic facts:  that they lived near each other in the same neighborhood, that they had been out on a date two and half months previously and went to the same church, Parkway Baptist.  Ex. 13, Eyre p.71, Def. Ex. C. A byproduct of living nearby was that Plaintiff often drove by Blackwell's residence on his way out of the subdivision since it was the most direct route to Loop 463. Ex. 17, Campbell Affid., maps.  The "recent" dating relationship between Plaintiff and Blackwell consisted of one date that ended prematurely due to Blackwell's receiving multiple work related calls and a visit to her home for a glass of wine and smooching.  Def. Ex. C.  Plaintiff informed Detective Rodriguez that Blackwell told him two weeks later that she had stopped calling because she had met

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

6

someone else.  Ex. 18, Buchanek Depo. p. 30 – 35. This is a common scenario in casual dating and infers nothing nefariously suspicious.

Defendant places great emphasis on Rodriguez's account of and feelings concerning the interview he conducted of Plaintiff:

> Rodriguez advised me that the interview with Buchanek bothered him.  Rodriguez advised that he knew Buchanek had been a captain at the Victoria County Sheriff's Office and had been involved in law enforcement for many years.  Rodriguez advised that during Buchanek's interview, Buchanek was emotionless, had no reaction to the disappearance of Blackwell, did not seem concerned and did not offer to assist in any way.
> Defendant's Ex. B.

This was nothing more than a glorified hunch.  Officer's hunches are typically discussed in the context of reasonable suspicion and whether or not an officer is justified in conducting an investigative stop.   The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer had a reasonable suspicion, based upon specific and articulable facts that criminal behavior has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *United States v. Brignoni-Ponce* (1978), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. An officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry, supra.* The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044. A "Terry" stop, or investigative stop,

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

7

may not be based merely on an inarticulate hunch.  *Terry*, 392 U.S. at 22.    Here Officer Rodriguez was presented with no specific and articulable facts that criminal behavior has occurred or is imminent.  All Rodriguez had was a retired thirty year law enforcement veteran who had recently returned from Iraq where he was injured in a bombing who was seemingly unemotional about the possible disappearance of a woman he had gone out on a single date with.  Ex. 18, Buchanek  Depo. p. 16 – 18.    It is commonly understood that keeping ones emotions in check is an inherent requirement of a law enforcement officer.  If Plaintiff had reacted to the news of Blackwell's disappearance in an emotional manner it no doubt would have been perceived by Rodriguez as suspicious as well.  Because Rodriguez's suspicion was merely a hunch, the reasonable suspicion required to conduct an investigatory stop did not exist, much less the probable cause exist to issue a search warrant.  While it may be difficult to crawl inside an officer's mind, the Appellate Courts have demonstrated wisdom in asking this Court to apply an objectively reasonable standard.  Under this standard, the entire cadre of officer's conduct is constitutionally offensive and cannot pass muster.

Defendant offered *U.S. v. McCann*, 465 F.2d  147, 159 (5th Cir. 1972) in support of the idea that suspicious answers given in response to an investigative inquiry support a finding of probable cause to search for contraband and stolen goods.  *McCann* and the case at bar are not factually analogous.   In *McCann*, an officer performed an investigative stop pursuant to an extensive investigation and his own observations that gave rise to reasonable suspicion that criminal activity had occurred or was imminent.  When questioned about the circumstances, Kelly stated that the Mustang he was driving was rented, that a friend brought him to get the car,

W:\R_Easley\Buchanek, Michael  vs. City  of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

8

and that he did not know who or where the friend was nor what was under the newspaper in the front floorboard. *Id* at 152.  The Court held that such a patently clumsy and incredible attempt at evasion would allow the officer to reasonably believe that the driver and his associates, whom he was apparently trying to protect, were involved in illegal activity. *Id* at 159.  It follows that such a reasonable belief, when combined with the knowledge that on two separate occasions cars with which Jon Joseph Kelly, the apparent driver of the car, was connected had been observed containing newspapers arranged to conceal something on the right front floorboard of each car, furnishes probable cause to believe that stolen or contraband goods are concealed in the car. *Id.* Moreover, the probability that such goods were concealed beneath the newspapers is enhanced by Kelly's response of "I don't remember" to Taylor's question as to what was beneath the newspapers. *Id*. In the case at bar, Plaintiff cooperated with the inquiry by inviting the officers into his house and providing honest and reasonable answers to Officer Rodriguez's questions. The circumstances and answers given by Plaintiff are a far cry from those in *McCann* and therefore, don't give rise to a finding of probable cause.  These observations were typed up by Rodriquez, on 3-17-06, after the warrant was issued and executed, again to meet the result oriented investigation begun at the scene of the body location at 3:00 p.m., Wednesday, March 15, 2006.  See Def. Ex. C, p.5 of 5, also see Ex. 13, Eyre depo. excerpts p. 68 -80.

The innocent connections between the victim and Plaintiff combined with the hunch of Officer Rodriguez do not amount to the "suspicious" connections and circumstances portrayed by the Defendant.  These facts establish a genuine issue of material fact and when viewed in favor of the non-movant Defendant's motion for summary judgment should fail on this issue.

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

9

Plaintiff has pled and continues to contend this was part of an illegal conspiracy to frame Capt. Buchanek for personal and political reasons.

**Sgt. Eyre's Actions In Preparing the Probable Cause Affidavits Were Objectively Unreasonable**

In preparing the probable cause affidavits, Defendant's actions were objectively unreasonable in that Defendant provided inaccurate and inadequate information from the probable cause affidavits.  Since alleged probable cause did not ever exist, especially prior to the dog trailing and scent line-up portions of the investigation, the information provided in the affidavits regarding these activities seem quite crucial in this question concerning reasonable probable cause and will be analyzed.

Search and seizure affidavits submitted by an officer in connection with a pending investigation are presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674 (1978). The veracity of the affidavit may only be attacked upon a showing of deliberate falsehood or reckless disregard for the truth of the affiant. *Id.*  In the context of a § 1983 case, to survive summary judgment a plaintiff must demonstrate that a genuine issue of material fact exists as to whether the false information contained in the affidavit was provided deliberately or with reckless disregard for the truth. *Freeman v. County of Bexar*, 210 F.3d 550 (5th Cir. 2000).  To meet this burden a plaintiff must make a "strong preliminary showing" that the affiant made the misstatement or omission "with the intent to mislead the magistrate." *United States v. Tomblin*, 46 F.3d 1369 (5th Cir. 1995) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990).

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

10

The first inaccurate and deceptive statement regarding the dog-trailing and scent-line up aspect of the affidavit appears when Defendant first discusses bringing in Deputy Pikett and his bloodhounds. Defendant stated that the "Fort Bend County Sheriff's Office bloodhounds had been successfully used before by the Victoria Police Department in the Spring Creek 2003 murder." Def. Ex. B. This "successful" use of Deputy Pikett and his bloodhounds came in the investigation of the Spring Creek murder several years prior. Ex. 13, S. Eyre Depo., 8:12-22. No one was ever arrested or prosecuted for this crime, as acknowledged by Defendant. Ex. 13, S. Eyre Depo., 8:12 – 9:13. This prior murder investigation in which Pikett and his bloodhounds were used "successfully" by the Victoria Police Department remains an open investigation and no one was ever convicted of that crime. Ex. 15, T. Copeland Depo., 18:13-21. Defendant knew that this case was never closed or prosecuted yet chose to describe the use of the Pikett's bloodhounds as "successful." This inaccurate information was provided deliberately with a reckless disregard for the truth in an attempt to mislead the magistrate.

The next false information that was provided with a reckless disregard for the truth with the intent to mislead the magistrate and manufacture probable cause involves the trailing activities of the bloodhounds. Defendant stated in the affidavit that "Quincy and James Bond then trailed the scent of the rope from Blackwell's body directly to the residence of Michael Buchanek at 402 Navajo Drive." Def. Ex. B. The first inaccurate portion of this statement has to do with the scent of the rope being used. It was actually the scent from the body of Sally Blackwell that was being used during the entire trailing. Ex. 14, K. Pikett Depo., 99:13-15. Following that, Defendant stated that the bloodhounds trailed "directly" from the body to

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

11

Plaintiff's residence at 402 Navajo Drive. Def. Ex. B.  This is simply not what occurred. This is an inaccurate and inadequate account of what occurred and not a simple mistake as Eyre asserts.  First of all, it is important to note that Defendant was accompanying Pikett on foot during the trailing. Ex. 14, K. Pikett Depo., 79:23-25.  Defendant has acknowledged that the dogs were taken to the victim's home prior to Plaintiff's home and that fact was omitted from the affidavit. Ex. 13, S.Eyre Depo., 31:15-25.  What exactly occurred after the dogs arrived at Blackwell's home at 310 Laguna is not factually certain because we have several differing accounts of the events.  After arriving at Blackwell's residence the dogs were rescented at a separate location prior to arriving at Plaintiff's residence.  According to Deputy Pikett, after the dogs trailed to Blackwell's residence there was a discussion among officers at that location in which it was discussed that there was a person of interest that lived in that same neighborhood and that Defendant informed Pikett of this fact. Ex. 14, K. Pikett Depo., 96:10-17.  It was established in this conversation that the person of interest lived on Navajo, which intersecting street the dogs had passed on their way to the victim's house.  Ex. 14, K. Pikett Depo., 96:21 – 97:16.  In regards to what occurred at this juncture, Pikett had this to say:

> "And she went to 310.  Then we had a conference, and they told me there was a person of potential interest, and at some point in this conversation they said he lived on this street and took me to it.  I told them, okay, well, we can start down here.  So I – I did not write down a house number, but I think this whole street is lined with houses, and then we went down like two or three houses, so they would not pick up the scent from this street-"

Ex. 14, K Pikett Depo., 98:24 – 99:7, Ex. 13, Eyre Depo. 83 – 88. So here we have the dogs being re-scented at least two or three houses down Navajo, or was it Laguna, as opposed to even being re-scented at the victim's residence and trailing from there.  When you take into account

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

12

that Navajo is a single entry cul-de-sac this information becomes even more important.  Deputy Pikett had his dogs allegedly trailing the scent of the suspect that was obtained by swabbing the neck of the victim and the rope that she was bound with. Ex. 14, K. Pikett Depo., 69:12 -70:9. Also according to Pikett, these bloodhounds were trailing where the scent is strongest as well. Ex. 14, K. Pikett Depo., 63:2-3.  So, therefore, the bloodhounds were allegedly trailing the suspect's scent from the site of the body on Hanselman Road to the victim's residence on Laguna, passing the only entrance to Navajo.  From there the dogs were taken back to Navajo and re-scented at a location at least two or three houses down on a single entrance circular cul-de-sac after it was discussed that the person of interest lived on this street.  Ex. 14, Pikett Depo., p. 96 -97. This situation was discussed amongst the group as a possible officer safety issue and at a minimum; Sheriff O'Connor knew Plaintiff's address, which was relayed to Defendant.  Ex. 16, T. O'Connor Depo., 36:14 – 37:8.  A reasonable inference from which would be that the specific house that posed the officer safety issue was relayed to those who might approach it. Defendant was privy to the address of Plaintiff when it had been discussed in earlier meetings that Plaintiff was to be interviewed and that he was subsequently interviewed at his residence at 402 Navajo. Def. Ex. B.  Officer safety is the main concern amongst law enforcement officers therefore, it defies logic to be cognizant of such an officer safety issue and to warn officers that it exists, but to then let them blindly approach it.  It was only after this that the dogs ended up at Plaintiff's house.   This is not "hypertechnical scrutiny" being applied to the definition of "directly," it is more so a scrutiny of the truth.  The over-simplified and deliberately inaccurate and inadequate statement concerning the trailing of the dogs was given by Defendant with a

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

13

reckless disregard for the truth in an attempt to mislead the magistrate and obtain warrants.  How nice then to assert, it is the magistrate's doing (causal chain broken).

Defendant argues in his Motion that the inclusion of the stop at the victim's residence makes it more likely, not less likely, that the dogs were successfully trailing and following the "killers path."  This is a nonsensical argument that doesn't follow the basic concepts of the alleged dog trailing when viewed in light of the facts in this situation.  As discussed above, the dogs were supposed to be trailing the suspect's scent where it is the strongest, even if they had been in a vehicle which is impossible to begin with, see affidavits of Coote, Nicely, Lowry and Frawley, attached hereto. Ex. 1, 2, 3 and 4.  The path that the dogs took brought them down Laguna, going right by Navajo, which is a single entrance cul-de-sac.  Ex. 13, Eyre Depo. p. 28. It is stated in the warrant affidavit, Def. Ex. B, that the Plaintiff was interviewed at his home on Navajo on the day after the disappearance which was also the same day of, and prior to, the trailing.  Def. Ex. B.  Following the theory of Defendants' regarding the collection of human scent cells along roadways, logically there would be many more in number and much more recent human epithelial cells of their suspect discarded along Navajo.  Not only would Plaintiff have discarded more recent cells along Navajo, but since it is a single entrance cul-de-sac, then it would only make sense that he would pass up and down it more often than Laguna, since he has to go either right or left on Laguna.  This would make his scent considerably stronger on Navajo than on Laguna.  If the dogs were truly trailing the scent where it was strongest, then the dogs should have turned on to Navajo when they first approached it.  Instead, they each allegedly

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

14

trailed past it on to the victim's residence.  It has also been established that the dogs were not re-scented at the victim's residence, but instead at least two or three houses down on Navajo or was it Laguna?  Therefore, the dogs didn't even trail directly from the victim's residence to Plaintiff's home, much less directly from the body to Plaintiff's home.  In fact, the dogs never turned onto Navajo at all, they were placed on Navaho.  Ex. 14, Pikett Depo. 98 – 99.

The next deliberately false statement can be found a sentence later in the affidavit. Defendant asserted that "The bloodhounds then alerted on the car in the driveway as well." Def. Ex. B.  Defendant then goes on to identify it as Plaintiff's vehicle.  Deputy Pikett, who was attached by leash to each dog during this fictitious trailing exercise, stated that neither dog alerted, in any manner or form, on the vehicle in the driveway.  Ex. 14, K. Pikett Depo., 127:13 – 128:4.  Yet again Defendant made a deliberately false statement given in reckless disregard for the truth given with the intent to mislead the magistrate.  Without this statement there would have been unreasonably scant, if any prudent probable cause to seize and search the vehicle. Furthermore, by having the dogs bypass and fail to alert on the vehicle of the "person of interest," the vehicle in which it was believed the body of the victim may have been transported in, reasonably calls into question the credibility of the entire alleged trailing exercise itself.  As does the omission by both Pikett and Eyre of the dog's alert on the boat parked on the street down from Buchaneks next to a neighbor's house.  Ex. 7 and 8, Affidavits of Mr. and Mrs. Schmiely.

The subsequent description of the path that the trailing exercise followed not only omitted streets, it omitted the true and correct path that the trailing party followed.  This is in no

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009
15

way inadvertent, inconsequential, or irrelevant. Ex. 13, Eyre depo. excerpts; p. 22 – 31. Defendant points out that the streets omitted were of no major consequence, both logistically and distance wise, in an effort to divert attention away from the fact that the true path of trailing was deliberately not provided.  By including the route down Laguna, past the Navajo intersection, to the victim's home, the break in the trailing where the dogs were taken by vehicle from 302 Laguna to a location on Navajo, and then on to Plaintiff's home would have provided a much more accurate account of this trailing exercise.  This accurate account of the trailing exercise would have damaged the credibility of the trailing exercise but, it would have given the Magistrate a true and accurate set of events from which to base his opinion on.  Interestingly, in the actual perpetrator's guilty plea, Grimsinger cannot recall the exact route he took out of the neighborhood to end up on Hanselman Road.  See attached Grimsinger testimony, Ex. 5.

Det. Eyre's conduct was not objectively reasonable in a qualified immunity analysis.  See Smejkal affid. Ex. 6.

**Defendant's Failure to Mention the Man "walking his poodles" not Utterly Immaterial**

The failure of the Defendant to mention the man "walking his poodles" in the probable cause affidavits was not "utterly immaterial."  When taken together with the other inaccurate and inadequate statements provided in the affidavits it further calls into question the credibility and accuracy of the walking of the dogs.  What is important about this information is not so much the man with his poodles, but the officer who was performing the preemptory sweep of Navajo before the alleged trailing began on this street.  As established in the Complaint and Mr. Schmiely's affidavit, this uniformed officer told this man to take his poodles inside because

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

16

"police dogs are coming."   Plaintiff's Second Amend. Comp., p. 14.  Having an officer perform a preceding walk down Navajo demonstrates that the officers already knew where they were going and what was going to happen.  The officer's statement to this man with his poodles only supports this fact.  Even assuming, in arguendo, that this was a completely innocent action taken to simply remove a possible distraction for the hounds, any sense of impropriety could have been avoided had it been included in the probable cause affidavits so as to provide the magistrate with a complete account of the events so that an independent decision of probable cause could be determined from the facts.  Ex. 7 and Ex. 8, Schmiely affidavits.

**<u>Plaintiff's Criticism of the Scent Line-Up is not Irrelevant</u>**

Defendant asserts that the criticism of the scent match line-up performed during this investigation is irrelevant.  Yet again the Defendant's description of the scent line-up was objectively unreasonable in that a vague and misleading description of the scent line-up procedures was given.  With such a rarely used scent line-up, really a scent match line-up, that is not commonly used in law enforcement it would be objectively reasonable to provide the magistrate with a thorough description of the methods, process, and controls involved so that the magistrate can make an educated and informed assessment of the scent line-up.  Defendant was present and assisted in the conducting of this scent line-up. Ex. 13, S. Eyre Depo., 108:23 – 109:9.  Therefore, Defendant either witnessed, took part in, or had the opportunity to obtain full information with regard to the scent line-up.  Defendant's description of the scent line-up was lacking and misleading in several ways.

As a preliminary issue, it is important to note that before this scent line-up Defendant had

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

17

no prior familiarity with scent line-ups. Ex. 13, S. Eyre Depo., 119:18-21.  Without having any

knowledge or familiarity with scent line-ups prior to this, Defendant would not have any way of

knowing what information was relevant.   Therefore, Defendant lacked the experience to

determine what information to include, exclude, or simplify when describing a scent line-up.

Without this knowledge and experience Defendant should have included all information with

regard to the scent line-up.  In his declaration Defendant acknowledged his unfamiliarity with

canine scent line-ups so he "thought it important to describe for the magistrate, in as much detail

as possible, the actions taken by the dogs and the process by which Deputy Pikett performed the

scent-pad line-up."   When you compare the information actually given in the affidavits with

what information could have been given, it is quite clear that things were described with as little

detail as possible.

    First, the basic set up, methods, and processes involved in the scent line-up were not

accurately and adequately described.  Defendant simply described the scent line-up as follows:

> "After this was accomplished we went back to the Victoria Police Department.
> Once at the Victoria Police Department Pikett performed a scent pad line-up.
>
> This line up is performed by allowing the bloodhound to smell an item collected
> from the crime scene.  The bloodhound then walks by six scent pads which are all
> of the same sex and race.  The bloodhound will indicate if one of the people in the
> line-up has the same scent as the scent collected from the crime scene.
>
> Pikett had obtained a scent pad from Buchanek.  He had done this by obtaining a
> document from Sheriff T. Michael O'Connor that Buchanek had recently given
> him.
>
> The scent pads of five people and Buchanek were place such that Pikett had no
> knowledge as to the location of Buchanek."  Def. Ex. B.

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

18

The first issue is that the location of the procedure is not given.  He states that it was performed after returning to the police station but he never mentions that it was performed in the parking lot at the police station.  The same parking lot that officers involved in this investigation, who could have been present at the scene of the body, the victim's house, and Plaintiff's house, use on a daily basis when coming and going from the station.  This is called contamination in the real K -9 world.

The second issue is that there is no explanation of the five control scents used in the scent line-up.  All that is given is that they are of the same sex and race.  No information is given as to where these control scents came from, who they came from, if any of these people were at the crime scene, how they were stored, if they are the same controls used in all scent line-ups performed by Pikett, nor how recent they were collected.  This is all pertinent information that should have been included in the affidavit for the magistrate to take into account.

The next issue has to deal with the fact that no information was given as to how these scents are presented in the line-up.  Specifically, there is no mention that these scents are in zip-lock baggies which are then placed inside tin cans which have no lid.  This practice lends itself to extensive cross contamination and human manipulation.  There is also no mention of whether or not anyone who handled any of the scents was wearing sterile gloves or not.  It has been established by Inspector Coote that this was the first "golden rule" violated by the officers at the subsequent scent line-up performed on March 21, 2006. Plaintiff's Ex. 1.  Furthermore, one reading the affidavits of Doug Lowry, Steven Nicely, Inspector Coote and Ed Frawley can see the false prophecy and hence, unreasonable handling of the K-9 tool in this fact situation.

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

19

Exhibits 1, 2, 3 and 4.  Eyre even ignored the mandates of his own department's general orders with regard to scent contamination at the scene of the abduction, the body, and the effect of exhaust fumes on scent.   See Exhibit 9, General Orders produced by the Victoria Police Department and the Victoria County Sheriff's Office, 2.06A.

Another important bit of information that was omitted in this description of the so-called scent line-up pertains to whether or not the dogs were on or off leash.  This is important to know when evaluating the credibility of this procedure.  When it is known that Pikett actually has the dogs on a tight leash with a length of three to four feet it is clear that the opportunity for human manipulation is even greater.  As Corporal Lowry states in his affidavit, the exercise Pikett and Eyre conducted is not even a scent line-up, but a scent match, see Ex. 3, Lowry Affid., Paragraph 20.

The information given concerning the scent pad obtained from Buchanek is inadequate and misleading as well.  First, the affidavits say that Pikett obtained a scent from Buchanek.  Plaintiff was making an assumption here because there was no way to verify that Buchanek's scent was the one actually collected.  This leap of faith would be more apparent had Defendant provided a more accurate explanation as to how this scent sample was obtained.  The over-simplified statement given was that Pikett "had done this by obtaining a document from Sheriff T. Michael O'Connor that Buchanek had recently given him."  There was no information given as to what this document was, where and how it was stored, who had handled it, or how recently it had been given to the Sheriff.  This is pertinent information that should have been provided.

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

20

The document in question was in fact a witnessed and notarized will and power of attorney. Plaintiff's Amended Comp. p. 11. This document had been handled by the Sheriff and a few other people. Defendant made no inquiry as to when the documents had been provided to the Sheriff by Buchanek but he was aware that the document was provided by Buchanek just after he retired and just prior to his going to Iraq. Ex. 13, S. Eyre Depo., 115:1-16, 119:22 – 120:10.

The act of obtaining a scent sample from this document was not included either. This is a rather important bit of information when you are asserting that the scent of an individual was obtained from a document. In fact, the scent sample was obtained from the document by making contact with the signature portion of the document with a gauze pad. Ex. 14, K. Pikett Depo., 120:13-20. Pikett was also aware the Sheriff had been in possession of this document for an extended period of time, possibly two years. Ex. 14, K. Pikett Depo., 120:21 – 121:8. Including this information would have been describing things in "as much detail possible" so as to provide the magistrate with an accurate and complete account of the events. Defendant chose not do this.

Finally, there was no detailed description as to how the dogs actually alerted on these scents in the scent match line up. All that is said is that the dogs alerted on the position of Buchanek. After viewing the video of the scent line-up performed on March 21, 2006 plaintiff's expert Bob Coote has stated that the "only person to have perceived to have knowledge as to when the dogs indicated a positive indication was Mr. Pikett, there was no clues given to anyone observing." Plaintiff's Ex. 1. See also p. 7 of Cpl. Lowry's affidavit, Ex. 10, and Nicely affidavit, Ex. 2, pp. 14 – 15. One must assume that this was the case with the previous line up

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

21

conducted from which the affidavits were drafted upon.   The way Defendant words it in the affidavits leads one to believe that the alerts of the dogs were clear and obvious.  A constitutional description of these alerts would have supported  a straight-forward description.  With evidence that the alerts were actually subtle, if existing at all, and only interpreted by the handler subjectively, we are confronted with a different situation, that if fully described to the magistrate would have provided an accurate, and objectively less convincing, account of the actual dog alerts.

Another bit of information that should have been mentioned at this juncture of the affidavits would have been that concerning possible cross-contamination, specifically that of Sheriff O'Connor.  Since O'Connor was the one who provided the documents from which

Buchanek's scent was allegedly taken from, then it would also be important to note his involvement in the investigation prior to that point and whether or not he was present at any of the other locations such as the scene of the body or the victim's house; which he was.  The fact that the Sheriff may have touched the documents and that he had been present at all the same scenes the dogs visited was acknowledged by Defendant.  Ex. 13, Eyre Depo., 117:16 – 118:1.  It was further acknowledged that the Defendant had no way of knowing whether or not the dogs were picking up on O'Connor's scent.  Ex. 13, Eyre Depo., 118:2-6.  When this potential cross-contamination situation was discussed at deposition, Defendant stated that he chose to leave out the cross-contamination because he didn't think it was relevant.  Ex. 13, S. Eyre Depo., 118:13-20.  Here we find yet another piece of important information that Defendant deemed irrelevant to include in the probable cause affidavit even though he had no experience or knowledge to base

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009
22

that decision on. This is reckless indifference, plain incompetence and unreasonably imprudent. It is grossly negligent as well.  See *Popow v. City of Margate*, 476 F. Supp. 1237, at 1242 and 1243 (D.N.J. 1979).

After taking a more in-depth look at the scent-line up, how it was carried out, and what information regarding such that the Defendant included (or failed to include) in the probable cause affidavit shows that Plaintiff's criticism is not irrelevant.  Defendant was present for and actually assisted in the scent line-up which provided him with a first-hand view of the procedures and methods used.  Even if he had not understood or missed a step he had the opportunity to discuss it with Pikett himself.  Defendant has stated that since he had no familiarity or knowledge of scent line-ups he provided the magistrate with as detailed as possible account of how it was conducted. See Eyre, Defendant's Ex. A, #42. The record simply does not support this statement.  Defendant acted objectively unreasonable in failing to provide an adequate and accurate account of the scent line-up for the magistrate.

## The Magistrate's Independent Determination of Probable Cause Did Not Break the Causal Chain

A constitutional violation occurred because the independent magistrate's decision did not break the causal chain.  It is true that since *Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977), courts within the Circuit have routinely held that "if the facts supporting an arrest are put before an intermediate, such as a magistrate or grand jury, the intermediate's decision breaks the causal chain and insulates an initiating party."  However, this rule is not the case if the plaintiff affirmatively shows that the deliberations of that intermediary were in some way tainted by the

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

23

actions of the defendants. *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994) (citing *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988).  Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior. *Hand* at 1428. The *Hand* court emphasized that the chain of causation is broken only where all the facts are presented to the grand jury or magistrate and the malicious motive of the officer does not lead him to withhold any relevant information. *Id.*

Plaintiff has shown in the discussions above that a genuine issue exists to whether or not complete, factual, and truthful information was provided in the affidavit by Defendant.  When viewed in the light most favorable to the non-movant, Defendant's motion for summary judgment should fail on this claim.  Plaintiff has shown that many relevant facts were left out and false information included in the affidavit.  Defendant offers *Taylor* as an analogous example where the plaintiff failed to produce any competent summary judgment evidence that the allegedly false and misleading information in any way tainted the intermediary's decision.   In *Taylor* no further summary judgment evidence was presented by the Appellants except for the initial assertions that the officer's report tainted the intermediaries' decisions. *Id* at 457.  No showing was made that the report or the testimony of the officer was relied upon by the magistrate or grand jury. *Id*.  That is not the case here.  Defendant prepared and presented the probable cause affidavit to the magistrate without the assistance of anyone from the sheriff's department.  Ex. 13, Eyre Depo., 47:9-11.  It was allegedly reviewed by a David Smith but no one in the Victoria Police Department read nor approved the affidavit before it was presented to the magistrate. Ex. 13, Eyre Depo., 46:5 – 47:8.  This probable cause affidavit was the only

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

24

document provided to the magistrate, no supplemental reports from Deputy Pikett were included. Ex. 13, Eyre Depo., 45:25 – 46:9. Therefore, the magistrate had only it to rely on when making his decision. It was impossible for the magistrate to make a decision free and independent of the tainted affidavit.

In *Morris v. Dearborne,* 181 F.3d 657 (5th Cir. 1999), *r'hrg en banc denied*, we find a more factually analogous case where the causal chain was not broken by the intermediary's decision. Here the defendant asserted that the causal chain was broken by a state judge's independent decision, relying on *Taylor* much like Defendant in the case at bar. The court in *Dearborne* found that rather than furthering her position, *Taylor* directly supported and indeed mandated that the district court's decision to deny her motion for summary judgment on the issue of causation. *Id.* at 673. Dearborne contended that welfare officials and a state judge independently evaluated the allegations and that she had no control over the ultimate disposition and that she simply reported suspected abuse as she was required to do by law. *Id.* The record did not support her argument because there was evidence that her role was not limited to that of a mere reporter of suspected abuse. *Id.* Dearborne allegedly created false evidence that was presented to the state court judged and to child welfare officials in the first instance, and there was further evidence that she continued to create false evidence after the emergency had passed as well. *Id.* In applying the lessons of *Taylor* and *Hand*, to the case, the court held that Dearborne was not entitled to summary judgment on the issue of causation because a fact issue existed regarding the extent to which (if at all) she subverted the ability of the court to conduct independent decision making by providing false information and withholding true information.

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009
25

*Id.*  The parties in *Dearborne* were to have their day in court to develop the facts concerning causation to allow the fact finder to determine the extent to which the welfare officials and state judge relied on Dearborne's representations. *Id.*  As previously discussed, the Defendant in this case subverted the ability of the magistrate to make an independent decision by providing false information and withholding truthful information.  Therefore, a genuine issue of material fact exists as to causation and when viewed in the light most favorable to the non-movant, Defendant's motion for summary judgment should be denied.

**Clearly Established Right**

Defendant further contends that he is protected by qualified immunity because Plaintiff was not deprived of a clearly established right of which a reasonable official would have known and because his actions were objectively reasonable in light of information he possessed and clearly established law.

Defendant argues that the clearly established law was and is that positive canine identifications create probable cause.  In support of such Defendant offers several cases in which canine identifications were upheld to provide probable cause.  The first problem with this argument is that violation of Plaintiff's clearly established 4th Amendment right's is not rooted solely on the scent trailing and line-up evidence.  It is rooted in Defendant's inaccurate, inadequate, and misleading statements made in the probable cause affidavits that he prepared and presented to the magistrate.  If Defendant had acted objectively reasonable and provided the magistrate with an accurate and complete account of the trailing and scent line-up activities then

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

26

this might be a plausible argument, though it too would fail under this factual scenario.  The second problem with this argument is that the "positive canine identifications" Defendant relies upon are all those of drug dogs and their sniff tests.  It has been established that there are many sub-genres of police dogs, all of which are specifically trained to perform a certain task. Ex. 14, K. Pikett Depo., 22:11 – 23:22.  See also the affidavits of Plaintiff's dog handlers, Ex. 1, 2, 3 and 4.

The case law that Defendant refers to is so factually removed from the case at bar that there is very little comparison.  The only thing that this case and those cited by defendant have in common is that they involve law enforcement dogs.  Defendant attempts to support the finding of probable cause in this case with that of drug dog identifications.  As stated previously, the types of training and activities performed by the different types of law enforcement canines is quite specific and one type of dog can not perform the same work as another.  Drug scent dogs are trained to alert on contraband.  They are brought in to sniff a piece of luggage, or a vehicle from which they will directly alert on if in the *presence* of *drugs*. Done correctly, this sniffy incursion into individual rights is minimal and reasonable. See *Jennings v. Joshua Independent School District,* 877 F.2d 313 (5th. Cir. 1989). This same principle applies as to cadaver or explosive scent detecting dogs. Even then, the Courts caution that said Narcotic dogs must be well trained, and the intrusion minimal.  *United States v. Place,* 462 U.S. 696 (1983), *U.S. v. Clarkson*, 551 F.3d 1196 (10th Cir. 2009), opinion on remand, *U.S. v. Clarkson*, Case No. 2:06CR734 DAK (D. Utah 2009), attached as Ex. 10.  In *Place, supra,* the Court describes the narrow authority possessed by police to detain briefly luggage at an airport, employ a dog sniff of said luggage,

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

27

**reasonably suspected** to contain narcotics. *U.S. v. Ibarra,* 493 F.3d 526 (5th Cir. 2007). In *Clarkson, supra.,* we see the judicial logic employed in finding the necessity of a reliable dog and handler, using a methodology and factors consistent with the guidelines set forth in civil cases by *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579 (1993), *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999), *Black v. Food Lion, Inc.,* 171 F.3d 308 (5th Cir. 1999). See also *U.S. v. Rozen,* 600 F.2d 494 (5th Cir. 1979). As in *Rozen,* we have *sub judice* the question of sniffing. This Circuit clearly does not, as Defendant argues, suspend the 4th Amendment carte blanche, to dogs or their handlers. Like a gun or a wiretap, a dog is a tool. The tool is capable of being used constitutionally, or not; it is fact dependent on almost a case by case basis. This lawyer can find no more closely analogous case in this Circuit to the instant case than *Rozen.* Plaintiff does not complain about the police using dogs, so much as the Plaintiff complains about the manner in which the dogs were used. The unreasonable and reckless claims, feats and improbable cause on which to base a warrant request are directly attributable to Pikett and Eyre. It is the context of a particular law enforcement practice, which may affect the determination on whether intrusion on Fourth Amendment interests on less than probable cause must be objectively reviewed when balancing the right to be free from unreasonable search and seizure to effective criminal investigation. *Place,* at 704. Unlike in drug trafficking, there was and is nothing transient about the home and vehicle of Capt. Buchanek. "Seizures of property must be based on probable cause," *Place,* at 719, citing many SCOTUS opinions. In the case at bar, Plaintiff, unlike *Place*, does contest the validity of the sniff search in both the trailing and line-up, *per se.* In *Place,* Justice Blackman and Justice Marshall, concurring note in their *ft.nt. 3,*

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

28

"The District Court did hold that the dog sniff was not conducted in a fashion that under the circumstances was "reasonably calculated to achieve a tainted reaction from the dog." *498 F. Supp., at 1228.* This however, is a due process claim, not one under the Fourth Amendment. Place apparently did not raise this issue before the Court of Appeals." *Place, at 723.* Plaintiff's due process claims pled in *Plaintiff's Second Amended Complaint*, (Dkt. 15), were found to be insufficient by this Court in its *Memorandum and Order* (Dkt. 44), preferring to analyze Plaintiff's claims under the more specific 4th Amendment rubric. Plaintiff asks the Court to revisit that ruling and definitively rule as part of its ruling on this Summary Judgment, whether Plaintiff's claims regarding the manner and methods of Eyre and Pikett sound only in a violation of his 4th Amendment rights or whether a 14th Amendment due process cause of action should survive the Qualified Immunity challenge.

As pled, the dogs in this case were scented off of swabs taken from a body and then allegedly trailed the scent of a person who had traveled in a vehicle approximately 5.5 miles, were re-scented at several locations, did not take an unbroken or direct route to the Plaintiff's residence, and were subject to many possible cross-contaminations or human manipulation. The factual circumstances (*context, Place, Id. at 704)* and difference between the dogs training and expertise means that the case law provided by defendant is even too far removed to be distinguishable.

**<u>Multiple officers</u>**

Defendant Eyre asserts that he has no culpable conduct with regard to either the dog trailing or scent match line-up exercises conducted by he and Dep. Pikett. It has been clearly

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

29

established that Eyre and Pikett ran the dogs together during the alleged trailing as well as the scent match line-up. Ex. 13, Eyre Depo. p. 45 – 46. It was Eyre that was appointed lead investigator at this stage and it was Eyre that chose to call Pikett and participate in his charlataneous junk evidence gathering. Ex. 13, Eyre Depo. p. 67.  It was Eyre who then drafted the warrant with information and input from Pikett and presented it to the Judge.  Ex. 13, Eyre Depo. p. 45 – 46.  It is not the established law in this country or this Circuit to allow officers who rely upon each other in wrongfully procuring a search warrant to escape § 1983 liability.  See *Franks, supra, Hart v. O'Brien,* 127 F.3d 424 (5th Cir. 1997).   The facts here are that Eyre's actions and Pikett's actions prior to the issuance and execution of the warrants were so inextricably interwoven, that a Seeing Eye dog could not lead either one along that razor's edge.

There is a trilogy of cases involving the 4th Amendment multiple officers and dogs.  *U.S. v. Leon*, 468 U.S. 897 (1984) holds, inter-alia, that the exclusionary rule and by definition § 1983 claims, are designed to deter police misconduct rather than punish the errors of judges and magistrates. *Arizona v. Evans,* 514 U.S. 1 (1995), extended the *Leon*, good faith exception to clerks of the Court, because they have no stake in the outcome of a prosecution.  *U.S. v. Clarkson*, *supra,* goes on to hold that the good faith exception could not be applied to the officer's good faith belief that the drug dog was well trained, without proof that the dog was. Also, one officer's reckless mistake applies to all of them, and an officer cannot rely on the mistakes of another to invoke the good faith exception to the exclusionary rule.  In *Clarkson*, any reckless mistake on which Officer Sutera (Eyre) relied was made by a fellow officer (Pikett). Were the good faith exception to apply in this circumstance, the improper police conduct of

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009
                                    30

conducting a search with an untrained or unreliable dog would not be effectively deterred.  Such a rule would minimize motivation for police to ensure a dog is actually trained or reliable before deploying it, or as in our case them, the plural to include both dogs and the handler as well.

*Hervey v. Estes,* 65 F.3d 784 (9th Cir. 1995) is instructive in that Eyre is analogous to the false declarant Officer Estes, who falsely included information recklessly stated by another officer upon which to base a warrant affidavit.  Two officers, working together, either making material misstatements or omissions, or possessing information of the events at issue prior to the submission of the affidavit in support of a warrant, can both be held not entitled to qualified immunity.  *Hale v. Fish, et al*, 899 F.2d 390 (5th Cir. 1990).  The extent of involvement in the underlying investigation and the facts gathering the information forming the basis for alleged probable cause distinguish  *Hale, supra,* and the case at bar,  from the factual specifics found in *Michalek v. Hermann,* 422 F.3d 252 (5th Cir. 2005) and *Hampton v. Oktibbeha County Sheriff Dept. et al,* 480 F3d 358 (5th Cir. 2007), which caused the Court of Appeals to apply Qualified Immunity to certain of the multiple officers there.

Eyre acted recklessly in his reliance on the facially subjective statement of the emotional affect of Michael Buchanek by Det. Adam Rodriguez, and on the commonsense defying unreasonable dog trailing walk and other claims of Pikett which Eyre was in a first hand position to observe and evaluate.  *Hart v. O'Brien, supra. and see Exhibit 11 and 12, excerpts from the depos. of Capt. Adam Reynolds and Inv. Gary Smejkal.*

## Conclusion

Defendant argues that he comported with clearly established law by providing a

W:\R_Easley\Buchanek, Michael  vs.  City  of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

31

thoroughly detailed account of the investigation to the magistrate and that his actions were thus reasonable in light of the information he possessed.  For all of the reasons previously discussed it has been established that this is not the case.  Facts from the summary judgment record show that there is a genuine issue of material fact as to whether or not Defendant acted objectively reasonable in gathering the information for and in preparing the probable cause affidavits; when viewed in the light most favorable to the non-movant, Defendant's motion for summary judgment should fail.  Plaintiff prays that the Court deny the Motion of Defendant Eyre and clarify its decision concerning the 4th and 14th Amendments raised herein.

Respectfully submitted,

*/s/Rex L. Easley, Jr.*

_____
**REX L. EASLEY, JR.**
Attorney-in-Charge
State Bar No. 06358425
Federal I.D. 5886


OF COUNSEL:

**COLE, COLE & EASLEY, P.C.**
302 West Forrest Street
P. O. Box 510
Victoria, Texas 77902
Ph.:  361-575-0551
Fax:  361-575-0986

W:\R_Easley\Buchanek, Michael vs. City of Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp to Def S. Eyre's MSJ.docx
7/28/2009

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of this document was filed electronically with the Court on this

5th day of August, 2009 and therefore served on all counsel for each Defendant.

Mr. Kevin D. Cullen
Mr. W. Clayton Cain
***Cullen, Carsner, Seerden & Cullen, L.L.P.***
P.O. Box 2938
Victoria, Texas 77902

Attorneys for Defendant,
Victoria County

Mr. Randall W. Morse
***Assistant County Attorney***
301 Jackson Street, Suite 728
Richmond, Texas 77469

Attorney –In-Charge for
Fort Bend County Defendants

Mr. William S. Helfand
Mr. Ryan Cantrell
***Chamberlain, Hrdlicka, White, Williams & Martin***
1200 Smith Street, Suite 1400
Houston, Texas 77002

Attorneys for Defendants,
City of Victoria, and Sam Eyre

*/s/Rex L. Easley, Jr.*
_____

**REX L. EASLEY, JR.**

W:\R_Easley\Buchanek, Michael vs. City of
Victoria et.al\Drafts\MSJ\090728 - Plntfs Resp
to Def S. Eyre's MSJ.docx
7/28/2009

33