# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **MICHAEL BUCHANEK** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. V-08-08** |
| **v.** | § | |
| | § | |
| **CITY OF VICTORIA, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court are Defendant Keith Pikett's ("Pikett") Motion for Summary Judgment (Dkt. No. 89) and Defendant Sam Eyre's ("Eyre") Motion for Summary Judgment (Dkt. No. 90). Both motions request summary judgment on the basis of qualified immunity.[1] After considering the motions, responses, replies, record, and applicable law, the Court is of the opinion that both motions should be DENIED.[2]

### Factual and Procedural Background

This 42 U.S.C. § 1983 action stems from the alleged wrongful search, seizure, and investigation of Plaintiff Michael Buchanek ("Plaintiff" or "Buchanek") in connection with the criminal investigation into the murder of Sally Blackwell by the Victoria Police Department and Victoria County Sheriff's Department. With respect to Defendants Pikett and Eyre, Buchanek claims that they violated his Fourth Amendment right to be free from unlawful

---

[1]Pikett and Eyre are the only individual defendants that remain in this lawsuit.

[2]Also pending before the Court is Plaintiff's Expedited Motion for Leave to File Third Supplemental Response to Motions for Summary Judgment Filed by Def. Keith Pikett [Dkt 89] and Def. Sam Eyre [90]. (Dkt. No. 114). Defendants City of Victoria and Eyre have not responded to that motion, despite their notice of intent to file a formal opposition to Plaintiff's motion by March 12, 2010. (Dkt. No. 115). The Court GRANTS Plaintiff's Expedited Motion for Leave to File Third Supplemental Response to Motions for Summary Judgment, (Dkt. No. 114).

searches and seizures after allegedly inaccurate and inadequate information was provided to a magistrate to secure a search warrant for Buchanek's home and vehicle.

In March 2006, Blackwell was abducted from her home and found dead shortly thereafter, on March 15, 2006.  Investigators discovered Blackwell's body in rural Victoria County, approximately 5.5 miles away from her residence.  Finding Blackwell's death to be a homicide, the Victoria Police Department and Victoria County Sheriff's Department began conducting an investigation into her kidnapping and/or murder.  Based primarily on Buchanek's casual social relationship with Blackwell, investigating officers began focusing on Buchanek as a potential suspect.  (Dkt. No. 53, Ex. 13 at 51-53).

Buchanek asserts that the preliminary investigation was improperly conducted and the reports and affidavits gleaned therefrom, which were used to obtain a search and seizure warrant from State District Judge Stephen Williams, selectively withheld crucial information and were actively misleading.  Buchanek further alleges Eyre's probable cause affidavits contained deliberate falsehoods or reckless disregard for the truth and that Pikett's dogs' trailing and scent identification tests were result-oriented, inaccurate, and/or improperly performed.

According to two affidavits sworn to by Eyre, a detective with the Victoria Police Department,[3] the investigating officers employed Defendant Pikett's scent-trailing canines, which trailed "directly" from Blackwell's body to Buchanek's residence.[4]  (Dkt. No. 90, Ex. B at 4, 10).  However, the canines did not trail directly from Blackwell's body to Buchanek's

---

[3] The probable cause affidavits at issue are marked as Exhibit B to Dkt. No. 90.

[4] Pikett is a deputy sheriff for Fort Bend County, Texas.

2

home; rather, the dogs trailed to Blackwell's home.  (Dkt. No. 95, Ex. 13 at 31).  Plaintiff has

produced evidence showing that after the dogs arrived at Blackwell's home, and after Pikett

was instructed that a person of interest lived on Navajo Street (the street where Buchanek

lived), the dogs were taken from Blackwell's home to Navajo Street and rescented.   (Dkt. No.

95, Ex. 14 at 94-100).  Only after the dogs were rescented on the road where Buchanek lived, a

road that is a single entrance cul-de-sac that the dogs passed on the way to the victim's

residence, did the dogs trail to Buchanek's residence.  (Dkt. No. 47, Ex. A & B).  Further,

neither of the two trailing dogs—Quincy and James Bond—could accurately be described as

"directly" trailing to even Blackwell's home.  The two dogs were alternated during the trail

and were rescented each time they were "trailing" the scent.  (Dkt. No. 95, Ex. 13 at 34, 42-43,

47; Dkt. No. 95, Ex. 14 at 87-88).  Moreover, Plaintiff has produced summary judgment

evidence showing that the vehicle trailing performed by Pikett's dogs is not even possible.[5]

(Dkt. No. 96, Ex. 8 at 8; Dkt. No. 95, Ex. 14 at 73).

     The affidavits also state that the dogs "alerted" on Buchanek's car.  (Dkt. No. 90, Ex. B

at 4 & 10).  However, Plaintiff has produced summary judgment evidence showing that this

was false.  Pikett's deposition testimony indicates that neither of the dogs alerted on

Buchanek's vehicle.  (Dkt. No. 95, Ex. 14 at 127-28).  This is even more curious when the

affidavit for the vehicle search warrant is considered, as Eyre states in that affidavit that he

discussed the dog's vehicle alert with Pikett.  (Dkt. No. 90 at 10 ("In talking with Pikett, he

---

[5]The Texas Department of Criminal Justice ("TDCJ") provided dogs to search the area where Blackwell's
purse and cell phone were found—this was before her body was found.  The TDCJ dog handlers informed
investigators that the they believed Blackwell had been inside a vehicle with someone and that her purse had been
thrown into the area they were searching.  (Dkt. No. 95, Ex. 13 at 63).  Moreover, Pikett testified that he believed
Blackwell's body was transported in a vehicle, as the scent was "crappy."  (Dkt. No. 95, Ex. 14 at 81-82).

indicated that this alert would indicate that the rope scent had been in the vehicle.")).

The affidavits note that Fort Bend County Sheriff's Office bloodhounds had been used "'successfully' before by the Victoria Police Department in [a] 2003 Murder." (Dkt. No. 90, Ex. B at 3). However, Victoria Police Department's prior use of the bloodhounds can hardly be categorized as successful. In the 2003 "Spring Creek Murder" investigation, the dogs trailed from the victim's body to a residence, but no prosecution ever resulted from the dogs' trailing activities, and the Plaintiff has produced evidence that suggests the dogs never uncovered any usable or helpful information in that investigation. (Dkt. No. 95, Ex. 13 at 8-10).

Eyre's affidavits also incorrectly describe the route taken by the dogs to reach Blackwell's and Buchanek's homes. (Dkt. No. 90, Ex. B at 5 & 10-11; Dkt. No. 59, Ex. 13 at 23-27). In fact, it would not have been possible for the dogs to follow the route described in the affidavits. (Dkt. no. 59, Ex. 13 at 24).

Moreover, the affidavits incorrectly state that the dogs trailed the scent of a rope draped over Blackwell's body—presumably the murder weapon—rather than the scent of Blackwell's body. (Dkt. No. 90, Ex. B at 4 & 10). Pikett testified that the dogs only trailed using the scent from Blackwell's body. (Dkt. No. 95, Ex. 14 at 99).

The affidavits failed to mention that a man was walking his small dogs on Buchanek's road before Pikett's dogs trailed to Buchanek's residence. The affidavits do not state that an officer walked down Buchanek's road before the dogs were given the cue to "trail" and told the man walking his dogs to take them inside because the police dogs were coming. (Dkt. No.

95, Ex. 7, Ex. 14 at 101-02).[6]

The affidavits also include information that, when viewed in the light most favorable to Buchanek, tends to show that Eyre knew, or should have known, that Pikett's canines were not capable of following a vehicle. The TDCJ provided canines at the scene where Blackwell's purse and cell phone were found. Eyre stated those dogs "basically ran around and didn't really go anywhere." (Dkt. No. 95, Ex. 13 at 53-54). Eyre explained this by stating that the dogs' "handlers were not there," as that is a "vital important part of the actual handler of the dog to direct—not so much to direct the dog, but to run the dog." (Dkt. No. 95, Ex. 13, at 54-55). The TDCJ bloodhound handler also informed Eyre that he "believed that Blackwell had been inside a vehicle with someone and that her purse had been with her and thrown into this area," as the bloodhound "lost the scent." (Dkt. No. 90, Ex. B at 3). There is also summary judgment evidence that tends to show that Eyre knew Pikett's dogs were not capable of performing a scent lineup or a trail. Raymond Adam Reynolds, an officer at the scene where Blackwell's body was found, told Eyre that the feats Pikett's dogs allegedly performed sounded impossible and "pretty close to voodoo." (Dkt. No. 95, Ex. 11 at 21-22 & 68-69).

The affidavits do not include details about the way the scent pad lineup was conducted. First, the affidavits do not provide information about the "document" that Buchanek "recently" gave to Sheriff T. Michael O'Connor. (Dkt. No. 90, Ex. B at 5). In fact, this document was a will and power of attorney that was given to Sheriff O'Connor before Buchanek left for military duty in Iraq. Buchanek had returned from Iraq at the time this investigation took place. (Dkt. No. 95, Ex. 13 at 110, 114-22; Dkt. No. 90, Ex. A at 3). Buchanek has produced

---

[6]This information is relevant because it indicates that Pikett "expected" the dogs to trail to Buchanek's house and because it provided the dogs an opportunity to follow the officer's scent down the road.

evidence suggesting that this "document" was two years old.  (Dkt. No. 95, Ex. 14 at 120-21).

Buchanek has also presented summary judgment evidence showing that scent begins to

dissipate immediately.  (Dkt. No. 95, Ex. 1 at 3).  Moreover, the affidavits did not indicate that

the document contained the scent of other individuals or that Sheriff O'Connor, who possessed

the document in question, was involved in the investigation in question.[7]  *See* (Dkt. No. 95, Ex.

13 at 114-22).

The affidavits also fail to mention where the other "filler scents" came from, or that

they are scents that Pikett keeps with him and "rotate[s] through."  (Dkt. No. 95, Ex. 14 at 114-

17).

The affidavits further failed to describe what procedural safeguards were, or were not,

used in conducting the scent lineup.  For example, the affidavits do not describe how the dogs

were handled by Pikett (e.g., whether the dogs were on or off a leash and whether the leash

was short/long/tight/loose); the procedures used to ensure Pikett could not see where

Buchanek's scent was placed in the lineup or to ensure Pikett could not identify what "bag"

was marked as Buchanek's scent—and hence cue the dog—when he walked by the open cans

containing the scents; the implication of conducting the scent lineup at the Victoria Police

Department parking lot—the affidavits do not even state the precise location where the lineup

was conducted, although it was conducted in the Victoria Police Department parking lot—and

whether scents of investigating officers would or would not contaminate the results; or the

precautions used to ensure that the open bags containing the various scents did not contaminate

the cans when the scents were rearranged.

---

[7]The fact that Sheriff O'Connor's scent was on the "document" and present during the investigation
suggests that the scent lineup was contaminated.

6

Based on the information provided in the affidavits, the investigating officers received a warrant to search Buchanek's home and vehicle and seize relevant evidence therefrom. Through the search and seizure of both Buchanek's person and property and the ensuing investigation, Buchanek contends he was subjected to "a course of harassment, distress and terror." The investigation ultimately failed to unearth any evidence tying Buchanek to Blackwell's kidnapping or murder.

Several months later, on August 10, 2006, Jefferey Grimsinger confessed to kidnapping and murdering Blackwell and subsequently pled guilty to the crime. (Dkt. No. 95, Ex. 13 at 124-25 & Ex. 5 at 3-9).

### Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the Court construes factual controversies in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998). If the burden of proof at trial lies with the nonmovant, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the nonmovant, but the movant is not required to negate elements of the nonmovant's case. *Id.* at

323.

The nonmoving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the nonmovant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Needless to say, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

### Qualified Immunity Standard

Qualified immunity shields officials from individual liability under 42 U.S.C. § 1983 unless the official's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Cantu v. Rocha*, 77 F.3d 795, 805 (5th Cir. 1996)). The doctrine of qualified immunity reconciles the

need to compensate individuals whose rights have been violated with the concern that personal liability will inhibit public officials in the discharge of their duties.  *See Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994).

The qualified immunity analysis requires a two-step inquiry.  *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004).  The threshold question has two parts.  The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right.  *See Scott v. Harris*, 550 U.S. 372, 377 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If the court finds a violation of a constitutional right, the next sequential step is to ask whether the right was clearly established in light of the specific context of the case.  *Id.* (quoting *Saucier*, 533 U.S. at 201).  A right is "clearly established" when its contours are clear enough for a reasonable official to understand that what he is doing violates that right.[8]  *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  If the defendants' actions violated a clearly established constitutional right, the court then determines whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable."   *Collins*, 382 F.3d at 537.  That is, the court must determine "whether reasonably competent officers would have known that their actions violated law which was clearly established at the time of the disputed action."  *Id.* (citation omitted).

---

[8]The Supreme Court, in *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815-16 (2009), recently noted that "while the sequence [of the two-part initial inquiry] is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

**Eyre's Objections to Summary Judgment Evidence**

Eyre filed Objections to Plaintiff's Summary Judgment Evidence.  (Dkt. No 106).

However, the Court relied on very little of the disputed evidence in ruling on <u>Eyre</u>'s motion for

summary judgment.  The Court will specifically address the evidence it relied on in ruling on

<u>Eyre</u>'s motion for summary judgment.  Eyre's objections that are not specifically addressed are

DENIED as moot.

<u>Plaintiff's Exhibit 12</u>

Eyre objects to Gary W. Smejkal's deposition testimony, (Dkt. No. 95, Ex. 12).  The

only portion of Smejkal's deposition relied on by this Court is the statements Smejkal made to

Eyre on the morning of March 16, 2006, before Eyre submitted his affidavits to the magistrate.

Eyre's hearsay objections are not warranted as Smejkal's statement that he believed Jeff

Grimsinger should be considered as a suspect in this case is not being offered for the truth of

the matter asserted.  Rather, the statement is being offered to show that Eyre heard this

statement and had the opportunity to consider it, question it, mention it to the magistrate, or

"double check" his work before submitting his probable cause affidavits to the magistrate.

Accordingly, Eyre's objection to Plaintiff's Exhibit 12 is overruled.

<u>Plaintiff's Exhibit 7</u>

Eyre objects to Donald Schmiely's affidavit.  (Dkt. No. 95, Ex. 7).  The Court only

relied on this affidavit for the proposition that Mr. Schmiely was walking his small dogs on

March 15, 2006, on Navajo Street when the trailing at issue took place and that an officer told

him to go inside because the police dogs were coming.  The Court understands Eyre's

objections to be based on hearsay and relevancy.  With respect to the relevancy objection, the

Court finds the portion of the affidavit relied upon to be relevant to whether Eyre omitted

material facts from his probable cause affidavits.  It is relevant that a police officer walked

down Buchanek's street ahead of Pikett and his dogs, perhaps laying his scent for the dogs to

follow, and "announced" that Pikett's dogs would be coming this way—toward Buchanek's

home.  Accordingly, Eyre's relevancy objection is overruled.  Moreover, the Court finds that

the statement made by the unidentified police officer is not hearsay, as it is not being offered

for the truth of the matter asserted, but rather to show that officers "believed" the dogs would

"trail" to Buchanek's home, regardless of whether that was actually true.  Even if the statement

is hearsay, the Court finds that it falls under the present sense impression exception.

Accordingly, Eyre's objection to Plaintiff's Exhibit 7 is overruled.

     Plaintiff's Exhibit 11

     Eyre objects to Raymond Adam Reynolds' deposition excerpts.  (Dkt. No. 95, Ex. 11).

Eyre objects to Reynolds' testimony on the grounds that it is not relevant, not based on

personal knowledge, and contains hearsay.  First, the only portion of Reynolds' deposition that

is relied on by the Court is Reynolds' statements to Eyre that he did not believe Pikett's dogs

could perform the feats they could supposedly perform and that the alleged tasks performed by

Pikett's dogs sounded "pretty close to voodoo."  (Dkt. No. 95, Ex. 11 at 21-22 & 68-69).

Since the evidence is not being offered for the truth of the matter asserted, it is not hearsay.

This evidence is only being offered to show what Eyre believed and what beliefs he was

exposed to before he submitted the probable cause affidavits.  Because the evidence is only

offered to prove what Eyre heard, Eyre's personal knowledge objection is not warranted.  The

Court finds these statements to be relevant; accordingly, Eyre's objection to Plaintiff's Exhibit

11 is overruled.

Plaintiff's Exhibit 13

Eyre objects to Plaintiff's inclusion of the complete deposition of Eyre because Plaintiff failed to direct the Court to specific portions of the deposition that raise factual issues. (Dkt. No. 95, Ex. 13). The Court overrules Eyre's objection and finds that Plaintiff did point the Court to specific and relevant portions of Exhibit 13.

Plaintiff's Exhibit 14

Eyre also objects to Plaintiff's inclusion of the complete deposition of Pikett because Plaintiff failed to direct the Court to specific portions of the deposition that raise factual issues. (Dkt. No. 95, Ex. 14). The Court overrules Eyre's objection and finds that Plaintiff did point the Court to specific and relevant portions of Exhibit 14.

**Pikett's Objections to Summary Judgment Evidence**

The Court has not relied on any of the evidence Pikett objects to in ruling on his motion for summary judgment. Accordingly, Pikett's objections to certain portions of Buchanek's summary judgment evidence, (Dkt. No. 104 at 2-3), are DENIED as moot.

**Eyre's Motion to Strike Plaintiff's Sixth Supplemental Initial Disclosures**

Also pending before the Court is Eyre's Motion to Strike Plaintiff's Sixth Supplemental Initial Disclosures. (Dkt. No. 111). The Court agrees with Eyre that Buchanek's failure to promptly identify the individuals listed in his Sixth Supplemental Initial Disclosures was not substantially justified or harmless with respect to the Court's consideration of Defendants' motions for summary judgment. However, the Court has not considered any of the information provided by the individuals named in Plaintiff's Sixth Supplemental Initial Disclosures in

ruling on summary judgment based on qualified immunity.  The Court finds that allowing

Plaintiff to name those individuals and rely upon them at the next stage of the litigation, when

Defendant has notice of them, is harmless.  Accordingly, Eyre's Motion to Strike Plaintiff's

Sixth Supplemental Initial disclosures is DENIED.

**Plaintiff's Due Process Claim**

Plaintiff asks the Court, in his responses to Eyre's and Pikett's motions for summary

judgment, to reconsider its August 28, 2008, Order dismissing Plaintiff's Fourteenth

Amendment claims.

The Federal Rules do not explicitly provide for motions for reconsideration of

interlocutory orders.  *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th

Cir. 1997).  However, the Fifth Circuit has held that when a district court rules on an

interlocutory order, it is "free to reconsider and reverse its decision for any reason it deems

sufficient, even in the absence of new evidence or an intervening change in or clarification of

the substantive law."  *Louisiana v. Guidry*, 489 F.3d 692, 698 n.14 (5th Cir. 2007) (quoting

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)); *see also*

*McKethan v. Tex. Farm Bureau*, 996 F.2d 734, 738 n.6 (5th Cir. 1993).

The Court still feels that its August 28, 2008, Order is correct.  Moreover, Buchanek

has not amended or sought leave to amend his complaint to "identify[] the independent roots of

his Fourteenth Amendment claim."  (Dkt. No. 44 at 8).  While Buchanek has amended his

complaint since the Court's August 28, 2008, Order, Buchanek's Second Amended Complaint

still fails to articulate the independent grounds—apart from his Fourth Amendment claim—for

his Fourteenth Amendment Claim.  (Dkt. No. 47).  Indeed, the clearest statement in

13

Buchanek's most recent complaint is that the scent lineups were "not only unreliable[,] but so tainted and cross-contaminated as to be consciously indifferent to the constitutional rights, including due process rights[,] of Plaintiff."  (*Id.* at 10).  However, this statement, which fails to state the factual ground for the Fourteenth Amendment claim, appears under paragraph 24, which articulates the Fourth Amendment claim of wrongfully "seeking, securing, and carrying out search warrants based upon inaccurate and inadequate information."  (*Id.* at 9).  Accordingly, the Court will not revive Buchanek's Fourteenth Amendment claims.

### Sam Eyre's Motion

Eyre claims that Buchanek cannot show that a constitutional violation occurred, that a clearly established right was violated, or that Eyre was unreasonable in performing his actions.  The Court disagrees.

Constitutional Violation[9]

Buchanek has presented enough evidence for a reasonable jury to find that Eyre violated Buchanek's Fourth Amendment rights by presenting the magistrate with affidavits that contained false information and material omissions.

As an initial matter, search and seizure affidavits submitted by an officer in connection with a pending investigation are presumed valid.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  However, a Fourth Amendment violation is established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application and the false statement is necessary to the finding of probable cause.  *Id.* at 155-56.  A statement is necessary to the finding of probable cause when "the affidavit's false material [is] set to one

---

[9]Eyre's attempts to redefine the constitutional violations alleged by Buchanek are unsuccessful.  The constitutional violation in this case is whether Eyre and Pikett committed a *Franks* violation.

side[] [and] the affidavit's remaining content is insufficient to establish probable cause."  *See*

*id.* at 155-56.  Similarly, the intentional or reckless omission of material facts from a warrant

application amounts to a Fourth Amendment violation.  *See Hale v. Fish*, 899 F.2d 390, 400

n.3 (5th Cir. 1990).  In order to determine whether facts omitted from a warrant affidavit are

material to the determination of probable cause, courts insert the omitted facts into the affidavit

and ask whether the reconstructed affidavit would still support a finding of probable cause.

*See United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).  Moreover, "[i]f the facts

omitted from an affidavit are 'clearly critical' to a finding of probable cause, then recklessness

may be inferred from the proof of the omission itself.  *Hale*, 899 F.2d at 400 (citing *Martin*,

615 F.2d at 329).

 As an initial matter, Eyre claims that even if the information about the dog trailing and

scent lineup is excluded from his affidavits, the affidavits would still contain probable cause

for a search.  The Court disagrees.  Apart from the dogs' activities, Eyre claims the following

information in the affidavits implicate Buchanek:  Buchanek knew and formerly dated

Blackwell, (Dkt. No. 90, Ex. B at 3); Buchanek and Blackwell's last date ended over two

months before Blackwell's disappearance when Blackwell needed to leave the date after

receiving a phone call for "work related" reasons, (*Id.* at 3-4); two weeks after their last date,

Blackwell informed Buchanek that she was seeing someone else after Buchanek inquired as to

why Blackwell had not called him, (*Id.* at 4); Buchanek frequently drove past Blackwell's

residence, as that was the way he accessed "loop 463 to go wherever he need[ed] to go," (*Id.* at

4); and the interviewing officer was "bothered" by the interview because Buchanek was

15

"emotionless" and did not offer to assist in anyway, (*Id.* at 4).[10]  This information does not establish probable cause, as it is far from establishing that "there is a fair probability that contraband or evidence of a crime [would] be found" in Buchanek's home or vehicle.  *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002).

Turning to the alleged omissions and false statements, the Court finds that Buchanek has shown that a genuine issue of material fact exists as to whether Eyre's affidavits contain false information and omissions and whether those statements and omissions were made deliberately or with reckless disregard for the truth.  Moreover, the alleged false statements are "necessary" to a finding of probable cause and the alleged omissions are "material" to a finding of probable cause.

As discussed in the "Factual and Procedural Background" section of this Order, Buchanek has produced evidence establishing a genuine issue of fact as to whether Buchanek's affidavits contain false statements and omissions.  When the allegedly false statements are set to one side, the affidavits' remaining content is insufficient to establish probable cause, even when the alleged omissions are not included.  The alleged false statements in Eyre's affidavits include the following:  **1)** Pikett's dogs were previously used <u>successfully</u> by the Victoria Police Department, (Dkt. No. 90, Ex. B at 3); **2)** <u>both</u> of Pikett's dogs followed the scent from the <u>rope</u> <u>directly</u> to Buchanek's home, (*Id.* at 4); **3)** <u>both</u> dogs <u>alerted</u> on Buchanek's vehicle, (*Id.*); **4)** the "document" used to obtain Buchanek's scent was <u>recently</u> provided to Sheriff O'Connor by Buchanek, (*Id.* at 5); and **5)** the route taken by the dogs was inaccurate, (*Id.* at 5).

_____

[10]It is worth noting that the interview with Buchanek happened before Blackwell's body was found, so Buchanek was not informed that Blackwell was "murdered" or "kidnaped."  Accordingly, Buchanek's response is hardly unexpected as Blackwell had only been missing for one day.

If the above false statements are excluded from the probable cause affidavit, a finding of probable cause is precluded.  The crux of Eyre's application for probable cause is that the dogs led "directly" from Blackwell's body to Buchanek's residence from the scent of the "rope"—or murder weapon—and that a document "containing Buchanek's scent" was used to identify him in a scent lineup.  Because probable cause cannot be supported when the alleged false statements are omitted, the false statements are "necessary."

Moreover, with respect to the alleged omissions, when the omitted information is included in the probable cause affidavit, a probable cause determination would not be supported.  The alleged omissions include the following:  **1)** The two dogs did not each trail from the body to Buchanek's house.  Instead, the dogs "rotated" along the trail.  **2)** The dogs did not trail "directly" from the body to Buchanek's house.  Instead, the dogs were rescented several times before arriving at the <u>victim</u>'s house.  The dogs were then transported to Buchanek's street, after an officer walked down Buchanek's street and informed Mr. Schmiely that "the police dogs were coming."  **3)** The dogs passed the only entrance to Buchanek's street on their way to the victim's house.  The dogs did not trail down Buchanek's street until they were walked to that street.  This happened after the investigating party was told that a "person of interest" lived on Buchanek's street.  **4)** Information about the way Buchanek's alleged "scent pad" was obtained is not included.  Eyre did not include information showing that the document used to obtain Buchanek's scent was a will and power of attorney, which was handled by numerous people including Sheriff O'Connor.  The affidavits do not state that Sheriff O'Connor was present at many of the relevant sites during the investigation in question, which could contaminate the results of the scent pad lineup.  The affidavits also fail to disclose

that the will and power of attorney was provided to Sheriff O'Connor <u>before</u> Buchanek left for

Iraq, possibly over two years before this investigation.  **5)** The affidavits do not indicate where

the "filler scents" used in the scent lineup came from, who the "filler scents" belonged to, or

that Pikett kept these "filler scents" on file and "rotate[d] through" them.  (Dkt. No. 95, Ex. 14

at 114-17).  **6)** The manner in which the scent lineup was conducted is not adequately

explained.  For instance, the affidavits do not describe that the dogs were on a short leash; how

Pikett was prohibited from seeing where the "suspect scent" was placed; how Pikett was

unable to see the "suspect scent" in the open can as he walked his dogs by the cans; the

implication of conducting the scent lineup at the Victoria Police Department parking lot (the

affidavits do not even state that the lineups were performed in the parking lot), as many

officers who were present during the investigation frequented the parking lot; and how the

different "scents" were kept from contaminating the open cans they were placed in when the

"scents" were rearranged.  When all (or even some) of the omitted information is included, a

finding of probable cause cannot be supported.  Accordingly, Eyre's alleged omissions are

"material" to a finding of probable cause**.**

Since the Court has found that if the facts allegedly omitted from the affidavits were

included, a finding of probable cause would be precluded, the omissions were "clearly critical"

to a finding of probable cause, and, hence, recklessness may be inferred from the proof of the

omission itself.  *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

Buchanek has also presented enough evidence to support a finding that the allegedly

false information was presented deliberately or recklessly.  In order for Buchanek to show that

the false information was provided deliberately or with reckless disregard for the truth, he must

make a "strong preliminary showing" that Eyre's false statements and omissions were made "with the intent to mislead the magistrate." *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995).

Buchanek has met the strong preliminary showing. When all of the alleged false statements and omissions are considered, it would be reasonable to conclude that Eyre made his false statements and omissions in an effort to mislead the magistrate. A reasonable inference from the evidence presented is that Eyre desired to obtain warrants with respect to Buchanek's residence and vehicle and "puffed," "bolstered," and, necessarily, "mislead" the magistrate when he made the alleged false statements and omissions. This showing is bolstered by the evidence that another officer told Eyre, before Eyre submitted the probable cause affidavits at issue to the magistrate, that he thought another person should be looked at as a suspect in the case. (Dkt. No. 95, Ex. 11 at 21-22 & 68-69). That "other person" ended up being the actual kidnapper and murderer. Buchanek's claim is further strengthened by evidence that Eyre had reason to doubt the validity and reliability of Pikett's dogs. The TDCJ dogs that Eyre viewed were not able to track any scent of the victim, murderer, or any other person Blackwell was associated with because the victim was "inside a vehicle." (Dkt. No. 90, Ex. B at 3).

Accordingly, Buchanek is able to present strong evidence that Eyre's statements were made deliberately and/or recklessly.

<u>Clearly Established Right</u>

The clearly established right at issue, despite Eyre's attempt to redefine it, is rooted in Eyre's alleged inaccurate, inadequate, and misleading statements in his probable cause

affidavits.  The Court finds that it was clearly established law in March 2006 that officers

submitting probable cause affidavits to a magistrate cannot intentionally, or with reckless

disregard for the truth, present false statements and material omissions.  *Franks v. Delaware*,

438 U.S. 154, 171 (1978); *Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990).

Objective Reasonableness

"In order to constitute a constitutional violation sufficient to overcome the qualified

immunity of an arresting officer, the material misstatements and omissions in the warrant

affidavit must be of 'such character that no reasonable official would have submitted it to a

magistrate.'"  *Morin v. Caire*, 77 F.3d 116, 122 (5th Cir. 1996).  The Court finds that no

reasonable officer would think his actions were appropriate under the Fourth Amendment if he

submitted a probable cause affidavit to a magistrate that contained numerous false statements

and even more material omissions.

Causal Connection Not Broken

Eyre claims that no constitutional violation occurred in this case because the

independent magistrate's probable cause determination broke the causal chain.  *See Smith v.

Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).  If "facts supporting an arrest [or, in this case, a

search and seizure] are placed before an independent intermediary such as a magistrate or

grand jury, the intermediary's decision breaks the chain of causation" for the alleged

constitutional violation.  *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) (citations omitted).

Fourth Amendment claims may nevertheless be maintained if the plaintiff affirmatively shows

that "the deliberations of that intermediary were in some way tainted by the actions of the

defendants."  *Taylor*, 36 F.3d at 457 (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir.

1988)).  "Any misdirection of the magistrate or the grand jury by omission or commission

perpetuates the taint of the original official behavior."  *Hand*, 838 F.2d at 1428.  The *Hand*

court emphasized that the chain of causation is broken only where all the facts are presented to

the grand jury or magistrate and the malicious motive of the officer does not lead him to

withhold any relevant information.  *Id.*  1427-28.

 In this case, Buchanek has presented evidence of taint.  A genuine factual issue exists

as to whether or not complete and truthful information was presented to the magistrate in

Eyre's probable cause affidavit.  Moreover, the probable cause affidavits were the only

evidence considered by the magistrate, as no supplemental reports from Pikett or anyone else

were included with Eyre's probable cause affidavits.  *See* (Dkt. No. 95, Ex. 13 at 45-46).  In

this case, the false and misleading information was all the magistrate could have relied on, and

Buchanek has presented evidence that would lead a reasonable jury to conclude that Eyre had a

malicious motive in misdirecting the magistrate with his "omission[s] [and/]or comission[s]."

*See Hand*, 838 F.2d at 1428.

 Accordingly, Eyre's motion for summary judgment on the basis of qualified immunity

is DENIED.

### Keith Pikett's Motion

 Buchanek's claim against Pikett is essentially the same as his claim against Eyre:

Pikett violated Buchanek's Fourth Amendment rights by providing inaccurate, inadequate, and

deceptive information for use in the probable cause affidavits.  Buchanek also claims that

Pikett knew that the information he provided would be relied on by Eyre in his probable cause

affidavits.  Pikett asks the Court to grant summary judgment in his favor on qualified immunity

grounds.

While much of the analysis on Buchanek's claim against Pikett is identical to Buchanek's claim against Eyre, a few distinctions are discussed below.  Otherwise, the Court adopts the reasoning discussed in connection with Eyre's motion in denying Pikett's motion for summary judgment.

While Pikett did not prepare the probable cause affidavits in question, "[a] governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit."  *Hart v. O'Brien*, 127 F.3d 424, 448-49 (5th Cir. 1997), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999).  In early 2006, when Pikett conducted his allegedly fictitious investigation, this was clearly established law.  Moreover, no reasonable officer would feel that creating false evidence and providing said evidence to the affiant in order to procure a search warrant would not be a constitutional violation.

Buchanek has presented evidence that creates a fact question as to whether canine vehicle trails are possible, (Dkt. No. 96, Ex. 8 at 6-10; Dkt. No. 96, Ex. 11 at 6-8), whether Pikett's dogs could perform vehicle trails, (Dkt. No. 96, Ex. 8 at 6-10; Dkt. No. 96, Ex. 11 at 6; Dkt. No. 96, Ex. 22 at 98-99; Dkt. No. 96, Ex. 1 at 35-40; Dkt. No. 96, Ex. 2 at 49), whether the scent lineup was fictitious, (Dkt. No. 96, Ex. 8 at 5-6, 10-11; Dkt. No. 96, Ex. 11 at 7-8), and whether Pikett was reckless with respect to the validity of his canine tests, (Dkt No. 96, Ex. 8 at 5-6, 10-11; Dkt. No. 96, Ex. 11 at 7-8).

Moreover, Buchanek has presented summary judgment evidence showing that Pikett

knew that Eyre would rely on his statements in procuring a probable cause affidavit.  Indeed, Eyre and Pikett even discussed what, and what not, to include in those affidavits.  (Dkt. No.96, Ex. 4 at 45-46).  *See Morris v. Dearborne*, 181 F.3d 657, 672 (5th Cir. 1999).

Accordingly, Pikett's motion for summary judgment is DENIED.

### Conclusion

For the reasons articulated in this Order, Pikett's (Dkt. No. 89) and Eyre's (Dkt. No. 90) motions for summary judgment on qualified immunity grounds are DENIED.  Moreover, Plaintiff's Expedited Motion for Leave to File Third Supplemental Response to Motions for Summary Judgment Filed by Def. Keith Pikett [Dkt 89] and Def. Sam Eyre [90], (Dkt. No. 114)**,** is GRANTED.  Eyre's Objections to Plaintiff's Summary Judgment Evidence, (Dkt. No 106), are OVERRULED or DENIED as moot.  And Eyre's Motion to Strike Plaintiff's Sixth Supplemental Initial Disclosures, (Dkt. No. 111), is DENIED.

It is so ORDERED.

Signed this 24th day of March, 2010.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE